Van Voorhis, J.
Under the principle of People v. Savvides (1 N Y 2d 554), it must be held that a promise was made to the witness Gordon, who was an accomplice undér indictment when he testified against appellant. Appellant was sentenced to State prison for not less than 7% or more than 15 years, having been convicted mainly on the testimony of Gordon and Gordon’s wife. After appellant’s conviction, execution was suspended of Gordon’s sentence to the Elmira Reformatory on one count of his indictment, and sentence was suspended on the other count. Appellant may have been the more serious offender, nor do we mean to condemn the practice of holding accomplices for trial or sentence until after they give to the People the benefit of their testimony, provided that the jury, through being fully *88 informed, are in position to weigh their testimony in the light of the circumstance that the accusing witness is himself an accused and expects leniency from the court by implicating his fellow. The point on this appeal is not that Gordon’s guilty plea and sentence were withheld until after he had testified against appellant, but that the facts regarding this were incompletely presented to appellant’s trial jury and that the prosecuting officer did not clear the record when Gordon testified that no promise had been made to him to induce him to co-operate with the prosecution. Although Gordon stated that he volunteered to co-operate, it was not fair or frank for him to have led the jury to believe that he had been promised nothing if he did co-operate, and the Assistant District Attorney who tried the case should have acquainted the jury with what had occurred in order to have avoided misconception concerning what may well have been a decisive factor in reaching their verdict. In saying this we do not imply that the trial counsel for the People deliberately intended to mislead the jury. However, we construe what had been said to Gordon as an inducement to get him to testify favorably for the People, as being in the nature of a promise contrary to Gordon’s denial that any promises had been made.
What occurred appears from the stenographic minutes of the sentencing of Gordon, which show that the prosecutor not only did in effect ask for leniency on the basis that Gordon and Mrs. Gordon had testified against appellant, but also for the reason that “ Prior to the trial of [appellant and another] I spoke to Gordon, I believe, on two occasions. At that time, I indicated to him that he would have to be completely frank and that I was in no position to make any promises to him of any kind whatsoever, but 1 did tell him, your Honor, that if he did testify as a People’s witness, that that cooperation would be called to the Court’s attention at the proper time. Gordon relied on my statement to that effect, Judge, and was completely cooperative and did testify as a People’s witness.” (Italics supplied.)
Although this was not a promise that the court would follow the District Attorney’s recommendation, it was a promise of what the District Attorney’s office would do in connection with the imposition of sentence. Gordon was promised that, if he co-operated in testifying for the People against appellant, this would then be called to the attention of the Judge by the Dis *89 trict Attorney’s office. The minutes show that this was done and, furthermore, that leniency was asked by the prosecutor in sentencing Gordon for the very reason that Gordon had relied in testifying on the promise that this would be done by the District Attorney’s office.
In evaluating the crucial testimony of Gordon and his wife, the jury should have been informed not only that Gordon hoped to gain leniency by testifying adversely to appellant, but that he had been promised by the District Attorney’s office that its prestige would be brought to bear upon the court for the obvious purpose of gaining a light sentence. It is well known that in imposing sentences Judges are often affected, and properly so, by recommendations of the District Attorney. As was said in the opinion by Judge Fuld in People v. Savvides (supra, at p. 557): “ Where a promise of leniency or other consideration is held out to a self-confessed criminal for his co-operation, there is grave danger that, if he be weak or unscrupulous, he will not hesitate to incriminate others to further his own self-interest. Long experience in granting leniency to ‘ co-operative ’ accomplices has undoubtedly shown the hazards in the practice to be more than offset by benefits to society in the detection and punishment of crime. It requires no extended discussion, however, to establish that the existence of such a promise might be a strong factor in the minds of the jurors in assessing the witness’ credibility and in evaluating the worth of his testimony. The failure to disclose an * understanding ’ or a promise cannot but seriously impair the jury’s ability to pass upon this vital issue, and that is precisely the infirmity under which the jurors labored in the case before us.” It was further said in Savvides that the fact “ that the district attorney’s silence was not the result of guile or a desire to prejudice matters little, for its impact was the same ”.
In a criminal action of this kind, where so much depended upon the testimony of Gordon and his wife, and where Gordon had a great deal at stake and relied on the promise of the prosecutor that if he co-operated in convicting appellant his co-operation would be brought to the attention of the sentencing court in his own case — as subsequently did occur — it seems that fairness required that such an understanding be brought to the attention of appellant’s jury. That is especially true where, as *90 here, Gordon denied categorically that a promise of any kind had been made to him.
The order appealed from should be reversed, the writ of error coram nobis sustained and appellant remanded for a new trial.