OPINION OF THE COURT
Anne E. Feldman, J.
In June of 1978, defendant — appearing pro se — was convicted after trial as the shooter in the felony murder of one James Coppola, and sentenced to imprisonment for a term of 25 years to life; Ronnie Spagna, a codefendant, was also convicted and sentenced to a lesser term.
This pro se motion made pursuant to CPL 440.10 is one in a series of appeals and writ applications defendant has made in both State and Federal courts subsequent to his sentence.
After a careful review of the extensive material submitted[1] this court finds no necessity for holding an evidentiary hearing and denies the motion.
Although defendant raises a variety of issues, only two merit discussion: (1) the prosecution’s failure to provide defendant with Brady and/or Rosario material; (2) newly discovered evidence consisting of an affidavit by Ronnie Spagna, exonerating defendant.
In support of his first claim, defendant contends that at trial the prosecution deliberately withheld information about a *384 1976 Special Prosecutor’s investigation into misconduct charges prosecution witness had made against Detective Fahy, a detective assigned to investigate the Coppola murder. He argues that conversations taped during the course of that investigation contained Brady information and statements by a prosecution trial witness concerning the crime, which should have been furnished to defendant as Rosario material.
The prosecution maintains on several grounds that defendant was not entitled to material from these conversations: (1) as the product of an ongoing confidential investigation, they constituted privileged information; (2) the tapes of the conversations were neither in the possession nor control of the District Attorney’s Office at the time of trial; (3) the tapes contained neither Brady nor Rosario material or even if they did, the prosecution’s failure to furnish them at trial does not warrant vacating the judgment 10 years later.
This court rejects the District Attorney’s argument that because the taped conversations focused on charges of police corruption, they constituted privileged confidential communications, exempt from Brady and Rosario requirements. Without jeopardizing confidentiality, the tapes could have been redacted and only those portions relevant to this case provided to defendants at trial.[2]
To determine whether the tapes contained disclosable information, this court has listened to them in camera.[3] They consisted of conversations between a detective working with the Special Prosecutor’s Office and Carl Vaccarino, at that time a sentenced New Jersey prisoner, who later testified at defendant’s trial to having heard defendant admit his culpability in the shooting. During these lengthy telephone calls Carl employed a variety of approaches aimed at persuading New York law enforcement authorities to help him obtain either release on bail pending his appeal from the New Jersey sentence or a reduction of that sentence in return for his "cooperation”.
*385 In this context he conveyed certain "information” to the detective, claiming it came from his brother Domenick, who was subsequently indicted as a coperpetrator in the felony murder and who also testified against defendant in return for favorable treatment for himself. Carl said that Domenick had learned from a member of the Coppola family that Detective Fahy was receiving a substantial salary from the decedent’s family and was therefore delaying making an arrest in the case, presumably in order to extend the term of his "employment”. These allegations were found groundless. Carl also relayed what he claimed was his brother Domenick’s description of the guns Spagna and defendant used and the role defendant had played in Coppola’s homicide.
Defendant claims the Vaccarino brothers’ false accusations against Detective Fahy constitutes Brady material because it indicates their willingness to make baseless allegations, rendering their testimony against him similarly suspect.
Assuming arguendo that this information would have been admissible as impeachment evidence against the Vaccarinos at defendant’s trial, the prosecution’s failure to provide defendant with it does not warrant the extreme remedy sought here. Failure to furnish Brady material leads to a new trial only if the court finds that had it been available to the jury a different verdict would have been likely (United States v Bagley, 473 US 667, 682 [1985]). Carl Vaccarino’s telephone "revelations” are not of that nature. The trial record shows that both defendant and Spagna’s attorney had available (and used) a significant amount of other impeachment evidence for challenging the Vaccarinos’ credibility.[4] Any additional material Carl’s telephone comments might have provided would have been merely cumulative and not likely to have led the jury to reach á different verdict.
The prosecutor’s claim that the nondisclosed material does not fall within the Rosario rule is rejected: while Carl’s recital of what Domenick told him is hearsay as to Domenick, it does constitute Rosario material vis-á-vis Carl. However, contrary to defendant’s contention, the District Attorney’s failure to provide him with the small amount of Rosario material buried in the taped conversations was the product of an understand *386 able oversight. The trial record shows that the District Attorney was aware of the Vaccarinos’ allegations of widespread police corruption but viewed them as both privileged and irrelevant to this trial. Accordingly, as is apparent from the record, the trial assistant did not review the tapes and was unaware that in the course of one conversation Carl made statements relating to the subject matter of his testimony which should have been provided to defendant.
Although on first impression the per se rule articulated in People v Perez (65 NY2d 154 [1985]) appears to mandate that defendant’s motion be granted, I conclude that in the absence of demonstrated prejudice to the defendant, the appellate courts of this State did not contemplate so belated an application of the per se rule to the type of Rosario violation involved here. In each case where the Court of Appeals has applied the Perez doctrine, the question of the prosecutor’s failure to supply Rosario material was raised on direct appeal. Each case was decided by the court within a year or two after conviction, thus enabling the prosecutor to retry the case with a minimum of hardship.
In People v Novoa (70 NY2d 490 [1987]), where the Court of Appeals did grant a CPL 440.10 motion based on the prosecution’s inadvertent failure to provide Rosario material, the defendant’s direct appeal of his conviction and his appeal from the trial court’s denial of the CPL 440.10 motion were before the court. Furthermore, the Novoa appeal raised questions of probable prosecutorial misconduct and a significant Brady violation, which the court describes as "[c]entral to this appeal”. (Supra, at 492.)
Nor does this court find the recent Second Department’s holdings in People v Robinson (133 AD2d 859 [1987]) and People v Cardona (138 AD2d 617 [1988]) dispositive of this motion.
In Robinson (supra) (where the principal issue was the correctness of the prosecution witnesses’ identification testimony) the court found substantial Brady violations as well as Rosario error. Both impacted upon the reliability of the identification evidence. In ordering a new trial, the court stated: "[W]e find that there is a reasonable probability that the result herein would have been different if the jury had heard testimony from a witness who, in effect, would have identified three other men as the actual perpetrators.” (Supra, at 860.) Moreover, in Robinson the Appellate Division — again focusing *387 on the accuracy of the identification testimony — ordered a Wade hearing prior to the retrial.
The nondisclosed material in Cardona (supra) revolved around the accuracy of the key witness’ identification testimony. As the court noted: "[t]he statement at issue [the witness’ description of the perpetrators as recorded by the police officer] contained descriptions of the perpetrators, neither of which was consistent with the defendant’s appearance”.
The Rosario material here — Carl Vaccarino’s one comment concerning his brother’s version of the homicide — mirrored Domenick’s trial testimony. It did not impact upon the issue of identification. As defendant’s papers concede, his defense at trial was not that he had been mistakenly identified but rather that the Vaccarino brothers deliberately (and apparently inexplicably) implicated him as the shooter in order to collect reward money.
Thus, although the broad language in which the per se rule has been articulated appears to require a new trial for Rosario violations, regardless of the nature of the undisclosed material, the Second Department, in applying the rule, uniformly highlights the effect the nonsupplied Rosario material might have had on the trial’s outcome. In no reported case has that material been as trivial and inconsequential as the statement defendant argues should lead to reversal here.
This court can find no policy justification for vacating defendant’s felony murder conviction, after more than 10 years, solely on the basis of this trivial and inconsequential Rosario error. The prophylactic goal of Rosario and its progeny is not served by stretching the doctrine’s limits so far.
Failure to furnish Rosario material is not a violation of constitutional dimension. Defendant is asserting what is now a statutory right (CPL 240.45 [1]) and was initially articulated as a rule founded upon "a right sense of justice” (People v Rosario, 9 NY2d 286, 289). He is asserting that right under another statutory provision (CPL 440.10) which is drafted to assure that convictions are not set aside for trivial reasons. The portion of defendant’s motion based on the prosecution’s failure to provide him with Rosario material falls within the purview of CPL 440.10 (1) (g). That provision dealing with motions based on newly discovered evidence does allow for a "harmless error” analysis. It provides that judgments should be vacated only if the newly discovered evidence "is of such *388 character as to create a probability that had [it] been received at the trial the verdict would have been more favorable to the defendant”.[5]
The factual recitation in Novoa (supra) does not disclose the subdivision under which the CPL 440.10 motion was brought. However, the decision’s silence on the question of how the Rosario per se ruling fits into the CPL 440.10 framework raises the distinct possibility that the issue was not argued before the court.
In sum, I do not believe our appellate courts contemplate automatic application of the Perez per se rule by trial courts in cases where the Rosario violation is so negligible and retrial so difficult.
The second focus of defendant’s motion is his claim that a 1981 affidavit by Ronnie Spagna constitutes newly discovered evidence. As pointed out by the prosecution in its opposing papers, the inadequately explained six-year delay in presenting this affidavit to the court and the generally suspect nature of such evidence from a convicted coperpetrator militate against considering it as the type of newly discovered evidence contemplated by CPL 440.10 (1) (g) as warranting the vacating of the judgment.
For the foregoing reasons defendant’s motion is denied.

. Both parties submitted legal memoranda containing numerous exhibits. In addition, defendant submitted a reply memorandum, a petition for reconsideration, and during the pendency of this motion, wrote over 40 letters, some purporting to convey additional factual allegations and legal theories, and others reiterating arguments previously advanced. Defendant’s frequent complaints about lack of response to his individual letters and the time taken to decide this motion are undoubtedly a product of his unfamiliarity with the subtleties and complexities of the judicial system. He is also apparently unaware of the role his voluminous submissions have played in prolonging preparation and issuance of this decision.

. As will become apparent from the balance of this decision, it is not necessary to resolve the prosecution’s claim that the tapes were not in its possession or control. This court cannot resolve that question solely by reviewing the motion papers. Conceivably, a hearing could reconstruct the District Attorney’s file contents and provide an understanding of the 1978 relationship between the District Attorney and the Special Prosecutor. Fortunately, such a complicated and onerous undertaking is not required.

. Defendant’s claim that he is entitled at this time to receive copies of the tapes is rejected. The prosecution has made a persuasive argument concerning their over-all confidential nature.

. For example, the jury was told that Carl Vaccarino was seeking a reduction in his New Jersey sentence; that Domenick Vaccarino was testifying on behalf of the prosecution in the hope of obtaining a favorable plea for himself; and that both brothers had prior criminal records.

. Defendant has met the other threshold requirements of CPL 440.10 (1) (g): the Rosario evidence gleaned from the tapes could not have been produced by the defendant at his trial even with the exercise of due diligence; indeed, the record reflects that the prosecution vociferously asserted the privileged nature of any conversations between the Vaccarino brothers and the Special Prosecutor and refused to reveal their contents to the defendant; once defendant obtained verification of the tapes’ existence, through his Freedom of Information Act inquiries, he immediately brought this motion, thus calling the newly discovered evidence to this court’s attention.