THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v REGINALD LEWIS, Appellant.

First Department, February 6, 1992

**APPEARANCES OF COUNSEL**

*E. Joshua Rosenkranz* for appellant.

*Richard Sheridan* of counsel *(Susan L. Valle* with him on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

GEORGE BUNDY SMITH, J.

The issue here is whether reversal is required where a witness testifies that the prosecutor promised him nothing in exchange for his testimony when in fact the prosecutor promised to call the cooperation of the witness to the attention of the District Attorney who was prosecuting the witness on an unrelated charge. Before us is a direct appeal from a judgment for murder in the second degree and criminal possession of a weapon in the second degree. Before us also is an appeal from the denial, without a hearing, of a motion pursuant to CPL article 440 to vacate the aforesaid judgment. By order of this court (Francis T. Murphy, P. J.), entered June 11, 1991, the appeals of the defendant from the judgment of conviction and from the order denying his motion pursuant to CPL article 440 were consolidated.

Defendant was convicted of the August 21, 1985 shooting death of Ralston Sequiera in the parking lot of a shopping center located at 233rd Street and Baychester Avenue in the Bronx. At trial, Andre Nelson testified that at about 10:15 P.M., at that location, he observed defendant, whom he had known for about 1½ years, and Alfred Saiia glancing from side to side. Nelson then saw defendant and Saiia approach Sequiera, a friend of Nelson's, and each man pointed a gun at Sequiera and fired at close range. The assailants fled in the direction of the Edenwald Projects, where Nelson knew defendant lived, passing a gas station where Ralston Wheatley was getting gas. Wheatley testified that he heard the shots and that seconds later he saw the defendant run by and tuck something into his waistband. Wheatley was a close friend of Sequiera and he knew the defendant from school and the Edenwald Projects.

As the only eyewitness to the actual shooting, Nelson's credibility was a critical issue during the trial. Through the testimony, the jury learned that Nelson sold drugs and that he had four misdemeanor convictions. John Q. Kelly, Esq., defendant's counsel, concluded his cross-examination of Nelson as follows:

"Q. One final thing, would it be fair to say that nobody has

promised you anything by this testimony you've given here the last two days?

"A. Nobody promised me anything.

"Q. Nothing?

"MR. KELLY: I have no further questions, Judge."

On summation, the prosecutor vigorously argued that Nelson's testimony should be credited when he stated:

"Are they [Nelson and Wheatley] credible? Are they telling the truth? Can you believe their testimony beyond a reasonable doubt * * * None of us can look into the head of a human being and decide whether or not they are telling the truth but there's a test you can use and the test is whether or not they've got a motive to lie, whether or not they have a reason to be less than a hundred percent truthful to you, whether or not these witnesses have any interest in the outcome of this case. What do they stand to gain? What does Andre Nelson stand to gain? What does Ralston Wheatley stand to gain? I suggest to you the quality of their lives isn't going to change regardless of your verdict in this case. * * *

"What motive did they have to lie? And you heard the testimony from Andre Nelson. He never had an argument or a fight or a problem with [the defendant].

"What reason does he have to falsely accuse him? What reason does he have to frame him for something he didn't do?"

A few days after Nelson testified in defendant's case, he pleaded guilty to a pending narcotics charge in Kings County. The promise of one day of jail time and five years' probation was made. Nelson failed to appear for sentencing and was returned on a warrant several months later. He was sentenced to one year's imprisonment.

Defendant subsequently sought vacatur of his conviction on the grounds that Nelson had lied when he testified that the prosecutor had made no promises to him in exchange for his testimony. Defendant alleged that he was thereby denied due process because the conviction was procured by false testimony and the prosecutor failed to correct the misstatement and to disclose the agreement. In support of his motion, defendant submitted several documents. First, the transcript of Nelson's trial testimony, demonstrating a misstatement or perjury, was provided. Second, defendant offered a letter, dated September 4, 1990, from Kings County Assistant District Attorney Jay K. Goldberg which denied that a promise

had been made to Nelson, but disclosed that "Mr. Nelson was told that if he cooperated with the Bronx [defendant's] prosecution, the plea offer would then be re-evaluated." Furthermore, Mr. Goldberg reported that there was a letter, dated September 8, 1987, from Bronx Assistant District Attorney (ADA) Paul Paley to the former Chief of the Narcotics Bureau, Vincent Faye. Goldberg further stated that in the letter ADA Paley referred to Nelson's September 1, 1987 testimony and requested that Nelson be offered a sentence of one day's incarceration and five years' probation, which was authorized by Faye on September 10, 1987. Third, a handwritten note allegedly contained in Nelson's Kings County Supreme Court file which indicated he testified for the People in defendant's case on September 1, 1987 was produced. The fourth exhibit is an affirmation, dated April 18, 1990, by Frank A. Brady, Esq., a Legal Aid Society attorney in the Criminal Appeals Bureau. By this affirmation, the Legal Aid Society sought and was relieved as counsel for defendant based upon the representation that they also represented Nelson and had learned that Nelson had a "secret" which they could not divulge and which created a conflict in the representation of both men. The Brady affirmation specifically referenced Nelson's testimony at defendant's trial and his denial that any promises had been made to him.

The People responded to the motion with an affirmation by now former ADA Paley, dated November 28, 1990. Therein ADA Paley stated in pertinent part:

"My conversations with Mr. Nelson in connection with his pending cases were that I could not promise him anything in exchange for his testimony, but I would let his cooperation be known following his testimony to the Kings County District Attorney's office.

"Following Mr. Nelson's testimony of September 1, 1986 [sic —should read 1987], I wrote a letter to Mr. Vincent Faye, Narcotics Bureau Chief of the Kings County District Attorney's Office, dated September 8, 1987, in which I asked that District Attorney's Office to offer Mr. Nelson a felony plea with a split sentence of one day incarceration and five years probation on Mr. Nelson's case, in view of his cooperation in the Bronx homicide case."

A copy of ADA Paley's September 8, 1987 letter to Faye "to request consideration for a witness" was also offered by the People. In addition to the information described in his affirma-

tion, ADA Paley stated in the letter that Nelson was the main witness against the defendant, that his cooperation was "outstanding" and had been provided despite the "fear of reprisals."

Based upon all of the papers, the People argued that no promise had been made to Nelson, that he was not induced to testify against the defendant because he was a "close friend" of the decedent, that Nelson had cooperated prior to trial by identifying the defendant in a lineup and testifying before the Grand Jury, and that, in any event, if there was error, it was harmless. In addition, the People argued that defendant had failed to support his motion with sworn allegations substantiating all of the essential facts.

The trial court, without addressing the sufficiency of defendant's papers, denied the motion because the issue was "demonstrable on the record and a direct appeal is the proper vehicle in which it should be raised."

In *People v Novoa* (70 NY2d 490, 492-493 [1987]), the Court of Appeals reversed a murder conviction, *inter alia,* because the prosecution had "breached a duty to disclose such promises [of benefit to a trial witness], to correct the witness's testimony that she was promised nothing, and to refrain from misstatement in summation." *(See also, People v Gayle,* 148 AD2d 307 [1989].)* In *People v Novoa,* the prosecutor maintained that no promises had been made to a key witness in a homicide case. However, as in the case at bar, the prosecutor did acknowledge telling the witness that if the Special Prosecutor's office (which was prosecuting the witness on narcotics charges) asked, he would state that she cooperated. The prosecutor made good on that promise and the witness was permitted to plead guilty and receive lifetime probation on the narcotics charges. *(People v Novoa,* 70 NY2d, *supra,* at 494-495.)* In concluding that disclosure of this agreement between the prosecutor and the witness was required under *Brady*[1] principles, the Court of Appeals stated:

"It is not the form of a promise, or any label the parties may affix to it, that trigger the prosecutor's duty of disclosure *(see, People v Cwikla,* 46 NY2d 434, 442, *supra; People v Mangi,* 10 NY2d 86, 91, *supra).* Rather, the obligation arises from the fact that the prosecutor and the witness have reached an understanding in which the witness's cooperation has been exchanged for some *quid pro quo* on the part of the

---

1. *Brady v Maryland,* 373 US 83 (1963).

prosecutor. *Once such an understanding has been reached, it is for the jury to determine how much value to assign it in terms of assessing the witness's credibility." (People v Novoa,* 70 NY2d, *supra,* at 497 [emphasis supplied].)

This reasoning is fully applicable to the case at bar. The jury never knew of the agreement between Nelson and the prosecutor and therefore had no opportunity to include it in its assessment of his credibility. Moreover, by the sworn affirmation of ADA Paley, who prosecuted the defendant, it is established that there was an agreement to report Nelson's cooperation to the Kings County District Attorney's office, that Nelson's testimony at trial was "outstanding", and that ADA Paley did advise the Kings County District Attorney's office of Nelson's cooperation. As such, it cannot be disputed that Nelson's testimony that no promises had been made to him was, at best, a misstatement or, at worst, perjury. Moreover, this "understanding" was never disclosed to the defendant, as attested to in the October 2, 1991 affirmation of John Q. Kelly, Esq., defendant's trial counsel.[2] Finally, there is no dispute that Nelson was given the plea bargain recommended by ADA Paley.

It should also be noted that the People's contention that the agreement had no impact on Nelson because he had already cooperated by identifying the defendant and testifying before the Grand Jury is without merit. The critical testimony was that provided at trial: Nelson was the only eyewitness to the murder. In addition, by not disclosing the agreement, the prosecutor was able to bolster Nelson's credibility in the summation without a substantive challenge from the defense.

In light of the foregoing evidence, which essentially has been either provided or conceded by the People, a hearing pursuant to CPL 440.10 is unnecessary. The criteria for granting the motion without a hearing have been satisfied.

Accordingly, order of the Supreme Court, Bronx County (William H. Wallace, III, J.), entered May 1, 1991, which denied defendant's motion, brought pursuant to CPL article 440, to vacate the judgment, rendered October 9, 1987, convicting defendant, after a jury trial, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent indeterminate terms of 25 years' to life and 5 to 15 years' imprisonment, respec-

---

2. Defendant sought enlargement of the record before this court to include the Kelly affirmation. That motion is granted herein as unopposed.

tively, reversed, on the law, the judgment vacated and the case remanded for a new trial.

Appeal from the aforesaid judgment of the Supreme Court, Bronx County (William H. Wallace, III, J.), rendered October 9, 1987, dismissed as academic.

Defendant's unopposed motion for enlargement of the record on appeal to include the affirmation of John Q. Kelly, Esq., is granted.

SULLIVAN, J. P., MILONAS, ASCH and KASSAL, JJ., concur.

Order, Supreme Court, Bronx County, entered May 1, 1991, reversed, on the law, the judgment vacated and the case remanded for a new trial. Appeal from the judgment of the Supreme Court, Bronx County, rendered October 9, 1987, is dismissed as academic. Defendant's unopposed motion for enlargement of the record on appeal to include the affirmation of John Q. Kelly, Esq., is granted.