OPINION OF THE COURT
Jones, J.
 A prosecutor is under a duty to disclose to defense counsel correspondence between the office of the District Attorney and the Parole Board advising of the co-operation of a principal prosecution witness in the trial of the witness’ accomplices and expressing the hope that such co-operation will be taken into account when the witness is considered for parole. Further, a handkerchief used as a gag as in this instance is a dangerous instrument within subdivision 13 of section 10.00 of the Penal Law, which is not unconstitutional.
On February 1, 1972 defendants Cwikla and Ford, together with one Thomas Cox, were indicted and charged with felony murder, burglary and possession of a dangerous instrument as a misdemeanor in connection with a burglary of an apartment which occurred on January 4, 1972 and resulted in the death of the tenant. Defendant Cwikla and Cox were apprehended prior to the filing of this indictment but defendant Ford *439 remained at large. Cox entered a plea of guilty to manslaughter in the first degree; Cwikla proceeded to trial and was found guilty of felony murder, burglary in the first degree and possession of a dangerous instrument. On appeal, this conviction was reversed because of prosecutorial misconduct and errors committed by the court (People v Cwikla, 45 AD2d 584).
On retrial Cwikla and Ford, who had been apprehended following Cwikla’s first conviction, were tried together. At trial the prosecution contended that while burglarizing an apartment defendants, together with Cox, bound and with a handkerchief gagged the tenant of the apartment and that as a consequence of being so confined the tenant died of asphyxiation. Defendants were each convicted of burglary in the first degree and possession of a dangerous instrument as a misdemeanor; they were acquitted of the other charge. The Appellate Division affirmed those convictions but modified the sentences imposed (60 AD2d 40). Both defendants and the People have been granted leave to appeal. For the reasons stated below we reverse and order a new trial.
At trial, the principal prosecution witness was the admitted participant Tommy Cox, who was then serving the sentence imposed on his plea of guilty to manslaughter in the first degree. During the course of his direct examination Cox testified that he had been given no promise in consideration for his testimony. On cross-examination he admitted that prior to testifying he had requested the Assistant District Attorney to write to the Parole Board on his behalf, but denied that he had been given any promise for his co-operation. Thereupon defense counsel made an application to the court for the production by the prosecution of any correspondence between the office of the District Attorney and the Parole Board concerning Tommy Cox. It was defense counsel’s position that such material, if it existed, might be exculpatory as tending to show a motivation to lie on the part of the prosecution’s chief witness. The Assistant District Attorney refused either to produce any such materials or to indicate whether or not any correspondence of this nature even existed.[1] The trial court agreed to issue a subpoena directing the Parole Board to turn over any such material; it refused, *440 however, to order disclosure from the prosecutor. It was not until the cases were on appeal to the Appellate Division that appellate counsel for the People for the first time furnished defense counsel with copies of pretrial correspondence which had been found in the Assistant District Attorney’s trial folder. This consisted of the following:
(a) two letters from Tommy Cox’s mother to the Assistant District Attorney who was trying the case asking his intervention with the Parole Board on her son’s behalf;
(b) a letter to the State Department of Correctional Services with specific reference to Tommy Cox (forwarded in turn to the Board of Parole) in which the Assistant District Attorney wrote:
"It has come to my attention that the above named inmate will appear or has appeared before the Parole Commission for the purpose of determining whether the said inmate will be considered for parole.
"This letter is being written to you for the purpose of advising you and your Commission of this inmate’s cooperation in the investigation and prosecution of a co-defendant by the name of Roger Cwikla. As a result of the cooperation displayed by Mr. Cox and the other evidence that was revealed during the course of the trial, the said defendant, Cwikla, was convicted of Murder and received a sentence of fifteen (15) years to life.
"At the time that the above named inmate, Mr. Cox, was sentenced by the Supreme Court of Bronx County, the Court was made aware of the cooperation extended by the said inmate at which time the Court imposed a sentence of fifteen (15) years.
"The undersigned feels that you and your commission should be made aware of the extreme cooperation given by Mr. Cox and hopefully you would consider the same at the time Mr. Cox appears before your body for consideration.
"You should also be advised that a third defendant in this case was apprehended recently [defendant Ford] and I am sure, if necessary, Mr. Cox will testify once again in the prosecution of the said third defendant.
"If there is further information that you desire from my office, please do not hesitate to call upon me.”
(c) a letter from the chairman of the Board of Parole, acknowledging receipt of the Assistant District Attorney’s *441 letter and expressing gratitude "for your concern, and the valued insight you present with regard to Mr. Cox”, adding: "the information provided in your correspondence is an added and welcome supplement to our case records, and I can assure you that it will be available to the Parole Board panel members who will meet with Mr. Cox to discuss release consideration.”
It is fundamental that material evidence which is in the possession of the prosecution and which is exculpatory in nature must be turned over to the defendant in order to give meaning to the constitutional right to a fair trial (Brady v Maryland, 373 US 83). It is equally true that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence’, nondisclosure of evidence affecting credibility falls within this general rule.” (Giglio v United States, 405 US 150, 154, quoting Napue v Illinois, 360 US 264, 269.) The existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles (Giglio v United States, supra; Boone v Paderick, 541 F2d 447, 450).
The materials sought by defense counsel here — correspondence between the office of the District Attorney and the Parole Board relating to the witness Tommy Cox — were of such a nature that the jury could have found that, despite the witness’ protestations to the contrary, there was indeed a tacit understanding between the witness and the prosecution, or at least so the witness hoped. We have on a previous occasion noted that the existence of such an agreement "might be a strong factor in the minds of the jurors in assessing the witness’ credibility and in evaluating the worth of his testimony”. (People v Savvides, 1 NY2d 554, 557.) Consequently, in view of the significance which the jury might have attached to this evidence and in keeping with the principles enunciated in Brady v Maryland (373 US 83, supra), and its progeny, we hold that the nondisclosure of this evidence denied defendant his right to a fair trial.
Moreover, in the present circumstances we are dealing with a specific request by defense counsel which particularized the materials sought to be produced. As the Supreme Court has recently stated: "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable”. (United States v Agurs, 427 US 97, 106.) *442 Here the conduct of the Assistant District Attorney was particularly inexcusable. His denial at trial of any knowledge concerning the existence of correspondence between his office and the Parole Board is mystifying in view of the fact that it was he who personally wrote to the State Department of Correctional Services on the witness’ behalf and received the letter of acknowledgment from the chairman of the Board of Parole. Furthermore, his comments in summation implying that Cox received no consideration from the Parole Board in return for his testimony compounded the prejudice to defendant. These tactics approach the level of prosecutorial misconduct which we condemned in (People v Savvides (1 NY2d 554, supra) where the District Attorney sat by silently and permitted his witness to testify falsely that he had not received any promise of leniency in return for his testimony. While in the present case the materials sought by defense counsel do not directly demonstrate the existence of an express promise, there is nonetheless a strong inference, at the very least, of an expectation of leniency which should have been presented to the jury for its consideration. The potential persuasiveness of this inference is suggested by the extent of the misleading and obstructive tactics employed by the Assistant District Attorney at trial. Accordingly, the failure of the prosecutor to turn over these materials was error which requires reversal of defendants’ convictions and a new trial.
In passing, we note that we agree, for the reasons stated in the opinion of Mr. Justice Harold Birns at the Appellate Division, that the evidence in this case was sufficient to justify the jury’s finding that the handkerchief with which the victim was gagged and which led to his death by asphyxiation was a dangerous instrument within the meaning of subdivision 13 of section 10.00 of the Penal Law, and further that that subdivision as so interpreted is not unconstitutional as void for vagueness.
Finally, in view of the fact that our disposition of this case requires a new trial, we think it appropriate to address other issues raised by defendant Ford concerning the propriety of certain pretrial identification procedures and the introduction, at trial, of proof of the pretrial lineup identification of defendant pursuant to CPL 60.25.
At a pretrial identification hearing the first of three identification witnesses, Alex Vega, was unable to make a courtroom identification of defendant Ford. Ford’s appearance at the *443 hearing had been altered to the. extent that his head and face had been shaved, allegedly for medical reasons. On application of the District Attorney, Ford was ordered to don a wig and facial hairs and to sit in a lineup with four other Black men— none of whom had on a wig, but each of whom had natural hair. All three identification witnesses then selected defendant from the lineup. Subsequently, at a continuation of the identification hearing, a second identification witness, Henry Drucker, was unable to recognize defendant in the courtroom.[2] At the conclusion of the hearing the court ruled that the lineup was proper and constitutional. The court, however, granted the defense motion to suppress the in-court identification by the witnesses Alex Vega and Henry Drucker "with leave to the district attorney to introduce as evidence in chief the line-up [identification] made by these witnesses under 60.25 of the Criminal Procedure Law”.
Defendant urges that it was error of constitutional dimension initially to require the alteration of his appearance by a cosmetician, particularly when the artificial wig made him stand out among the other four Black men. Defendant further contends that the court misinterpreted and misapplied the provisions of CPL 60.25.[3]
Defendant’s argument concerning the compelled wearing of artificial head and facial hairs appears to be two-pronged. In the first instance defendant seems to argue that the tampering with his appearance was violative of his constitutional privilege against compelled self incrimination and as well a constitutional right to determine his own appearance (cf. People v Vega, 51 AD2d 33 [compelling the defendant to remove a beard]). Secondly, defendant argues that the lineup was impermissibly suggestive inasmuch as defendant was the only person in the lineup who wore a wig and that this artificial change in appearance "made the defendant stand out from the others”.
In the circumstances of this case, it was not error to compel defendant to conform his appearance at the lineup to his appearance at the time of the crime. Similar orders have been upheld in a variety of circumstances. For the purpose of *444 facilitating identification, it has been held permissible to require a defendant to wear strips of tape on his face and repeat words which had been used by the criminal participants (United States v Wade, 388 US 218); to model a blouse (Holt v United States, 218 US 245); to wear a scarf partially covering his face (United States v Gaines, 450 F2d 186, cert den 405 US 927); to wear an artificial goatee (United States v Hammond, 419 F2d 166, 168, cert den 397 US 1068); and to wear a wig (United States v Boatwright, 425 F Supp 747, 752-753). Thus, defendant’s constitutional privilege against self incrimination was in nowise violated. Additionally, requiring defendant to wear a wig in this instance was not a significant infringement of the right, if any, which he may have to determine his appearance; he could have immediately returned to his prior appearance following his participation in the lineup by merely removing the wig.
With regard to defendant’s contention that the wig made him stand out from the other participants in the lineup, the trial court specifically determined that the lineup procedure was conducted in a constitutionally proper fashion. This essentially factual finding was necessarily affirmed by the Appellate Division and we perceive no reason to disturb it.
We next turn to defendant’s contention that the court misinterpreted and misapplied CPL 60.25. This section permits an identification witness to testify that he has previously identified and recognized the defendant prior to trial in circumstances consistent with the defendant’s constitutional rights if "[h]e is unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question”. The thrust of defendant’s argument is that the statute only applies to a situation where the witness is unable, in fact, to identify the defendant at trial, due to a lapse of time or other factors, and does not apply where, as here, the witness has been barred from making such an identification by prior court order. We disagree. For purposes of permitting testimony of a prior identification pursuant to this statute, a determination by a trial court that a witness does not possess sufficient present recollection to permit an in-court identification of the defendant must be accorded the same effect as a statement by the witness that he cannot now identify the defendant. Such an interpretation, in fact, is advantageous to the defendant inasmuch as it precludes the possibility of an in-court identification by a witness actually *445 lacking sufficient present recollection. Therefore, we find no error in the introduction of evidence at trial concerning the lineup identification of defendant by the witnesses Drucker and Alex Vega.
Accordingly, for the reasons stated, the orders of the Appellate Division should be reversed, and the case remitted for a new trial.[4]
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur with Judge Jones.
Orders reversed and a new trial ordered. Cross appeal by the People dismissed.

. The Assistant District Attorney stated that he "[could not] with authority say whether anything was sent or received at this point”. It is worth noting that the same Assistant District Attorney prosecuted defendant Cwikla at his first trial, which trial was reversed, in part, for prosecutorial misconduct.

. All three witnesses testified that they had viewed photographs of Ford prior to the hearing. The trial court ruled that the exhibition of photographs complied with the standards of Simmons v United States (390 US 377).

. We have reviewed the other issues raised by defendant Ford concerning the pretrial identification procedures and find them to be without merit.

. In view of our disposition of this case, the issue raised by the People concerning the modification of defendant Cwikla’s sentence is academic and need not be addressed.