OPINION OF THE COURT
Kaye, J.
 Central to this appeal are issues relating to promises of benefit by the prosecution to a trial witness who is under separate indictment for unrelated crimes. We conclude that the prosecutor here breached a duty to disclose such *493 promises, to correct the witness’s testimony that she was promised nothing, and to refrain from misstatement in summation. In the circumstances of this case, where there was also a Rosario[1] violation, the conviction must be vacated and a new trial ordered.
Defendant was charged with second degree murder for shooting Hippolito Rodriguez at 174 Rivington Street on Manhattan’s Lower East Side. Defendant did not dispute that he shot Rodriguez but asserted that he did so in self-defense. At trial, the prosecution’s version of the shooting was presented by Rodriguez’s wife (Maria) who testified that, as her husband was returning from work, defendant shot him without provocation. Shortly before the shooting, defendant (the building’s rent collector) had approached her in her apartment and threatened to kill her and "get rid of’ her husband if they did not pay their rent. As soon as defendant departed, Maria Rodriguez ran to a window and shouted for help. Five minutes later, defendant confronted Hippolito Rodriguez in the hallway outside the Rodriguez apartment and shot him three times. Maria Rodriguez dragged her husband into their apartment and began yelling for help.
From her vantage point in a parked car outside the apartment building, Anita Ortiz (a neighbor) was able to corroborate parts of Maria Rodriguez’s version of the events. She testified that immediately prior to the shooting she saw Hippolito Rodriguez return home from work. Shortly after he entered the building, Ortiz heard Maria Rodriguez call for her husband from the top floor of the building. Ortiz then heard several gunshots, followed by Maria Rodriguez’s screams. Moments later, she saw defendant, defendant’s wife and a third person (Pablo Rodriguez) rushing out of the building.
The defense’s contrasting portrayal was presented by defendant and his friend, Pablo Rodriguez, who was in the hallway at the time of the shooting. According to both, it was Hippolito Rodriguez who instigated the confrontation by punching defendant and knocking him to the floor. Maria Rodriguez, who was standing next to her husband, began screaming. Kneeling on defendant, Hippolito Rodriguez began hitting him. With Maria Rodriguez shouting "kill him, kill him,” Hippolito Rodriguez grabbed a machete from his wife. Defen *494 dant reacted by drawing a gun from his waistband and shooting twice. Rodriguez backed off and defendant fled.
On rebuttal the prosecutor called two police officers to discredit Pablo Rodriguez’s testimony with prior inconsistent statements made shortly after the shooting. The People also recalled Anita Ortiz for the same purpose. She testified that the day after the shooting Pablo Rodriguez told her that defendant attacked Hippolito Rodriguez with a metal pipe, that Rodriguez managed to take the pipe from defendant, and that defendant then shot Rodriguez. After it was revealed that Ortiz was facing indictment for selling drugs to an undercover police officer, the prosecutor asked: "Mrs. Ortiz, had anyone promised anything with respect to your pending case?” She answered "no.”
In summation, the prosecutor addressed Ortiz’s credibility: "There’s no reason for Anita to come to the defense of Maria Rodriguez unless what she heard and saw actually happened * * * Anita is a very strong, intelligent, forthright woman. Yes, she has been indicted for a crime * * * She also told you she wasn’t promised anything, ladies and gentlemen. Anita did not have to be promised anything. I submit she’s a woman who will stand or fall on her own merits.” Following three days of deliberation, defendant was convicted of second degree murder and sentenced to a term of imprisonment of 25 years to life.
More than a year later, in the course of a second murder trial (the Corchado trial) — in which defendant was acquitted— defendant acquired information that prompted a motion pursuant to CPL 440.10 to vacate the conviction. During the Corchado trial, defendant learned that Ortiz — again a witness for the prosecution — had, after the Rodriguez trial, pleaded guilty and received lifetime probation rather than a prison sentence for the drug charges that were pending against her at the time of defendant’s trial for the Rodriguez murder. Defendant argued that the prosecutor had committed misconduct by permitting Ortiz to testify in the Rodriguez murder trial that no promises had been • made, when she knew or should have known that Ortiz had been promised leniency in exchange for cooperation. The trial assistant denied knowing of any such agreement but acknowledged having told Ortiz "that I was making no promises in exchange for her testimony. I stated that if I were ever asked by anyone in the Special Prosecutor’s Office I would tell them that she cooperated.”
*495 In further support of his motion to vacate the judgment defendant argued that the People also had failed to produce a report made by Police Detective Carrano in which the detective recorded statements made by Ortiz in an interview he and the trial assistant had conducted with her. The prosecution acknowledged that it had not provided defense counsel with the report, asserting that the omission was inadvertent and the substance insignificant. The trial assistant had photocopied Carrano’s file and returned it to him by March or April 1982; she did not check the file again after the interview with Ortiz in May 1982, or before the trial commenced six or seven months later, believing that there would be no additional material.
At the CPL article 440 hearing, Assistant District Attorney Marcel Philippe of the Special Narcotics Prosecutor’s office testified that he had been in charge of the prosecution of Anita Ortiz, who was under indictment for drug sales and upon conviction faced a mandatory sentence of three years to life in prison. Ortiz agreed to cooperate by providing information on other drug transactions; in return, Philippe promised to evaluate her cooperation and inform the Special Narcotics Prosecutor, who would ultimately decide whether to recommend a sentence of lifetime probation. Ortiz was permitted to plead guilty and was sentenced to lifetime probation. Both in his memorandum and at sentencing, Philippe told the court that in addition to the narcotics investigations, Ortiz had cooperated on a homicide case. The trial assistant testified that she was not familiar with the procedures of the Special Narcotics Prosecutor’s office and was unaware that the Special Narcotics Prosecutor ever entered into agreements with defendants whereby defendants received probation in return for cooperation. Before trial she called Philippe to inform him that Ortiz was going to be her witness, but was not told of any cooperation agreement. With respect to the Rosario issue, Carrano testified that he and the trial assistant were present when Anita Ortiz gave her statement. Carrano recorded the statement, included it in a DD-5 report which he placed in the Rodriguez file, and did not show the report or the file to the trial assistant.
The trial court denied defendant’s motion, concluding that "there was no promise by any ADA of a benefit to be extended to Ms. Ortiz on her narcotics cases in exchange for her testimony in this case.” While recognizing that Ortiz was told *496 that if anyone in Special Narcotics asked about her cooperation the trial assistant would reveal it, the court found that even that assurance was apparently given in the context of the Corchado case, not the Rodriguez case, which preceded it. Moreover, the court held that the People’s failure to turn over Ortiz’s statement — which was Rosario material — was inadvertent, which took the case out of the "strict liability” rule; the court then concluded that there was no prejudice because Ortiz’s testimony was cumulative and not crucial to a finding of defendant’s guilt. The Appellate Division affirmed, without opinion.
We now reverse.
The Promises Issue
The concept of fairness embodied in the Due Process Clauses of the State and Federal Constitutions imposes upon the prosecution a duty to apprise the defense of evidence favorable to the accused (People v Cwikla, 46 NY2d 434, 441; Brady v Maryland, 373 US 83). To give substance to this constitutional right, it is incumbent upon the prosecutor, who speaks for the government, to ensure that material evidence which is in its possession and is exculpatory in nature is turned over to the defendant (People v Cwikla, 46 NY2d 434, 441, supra; see, Giglio v United States, 405 US 150, 153-154). This duty of candor and disclosure is no less applicable when the evidence is relevant only to the issue of credibility (People v Cwikla, 46 NY2d 434, 441, supra; see, People v Savvides, 1 NY2d 554, 557). Thus, it is now firmly established that the "existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles”. (People v Cwikla, 46 NY2d 434, 441, supra; People v Fein, 18 NY2d 162, 172-173, cert denied 385 US 649, reh denied 386 US 978; People v Zimmerman, 10 NY2d 430, 432-433; People v Mangi, 10 NY2d 86, 89; People v Savvides, 1 NY2d 554, 556-557, supra; Giglio v United States, 405 US 150, 153-154, supra; Napue v Illinois, 360 US 264, 269; see also, People v Qualls, 70 NY2d 863.)
As a further incident of defendant’s right to a fair trial, a prosecutor has an obligation to correct misstatements by a witness concerning the nature of a promise (People v Piazza, 48 NY2d 151, 162-163; People v Savvides, 1 NY2d 554, 556-557, supra). A prosecutor may not sit by silently while her witness *497 testifies falsely that she did not receive any promise in return for testimony (People v Cwikla, 46 NY2d 434, 442, supra). If a witness mischaracterizes or falsely denies a promise, the prosecutor must "by immediate statement of his own or by further appropriate examination * * * forthrightly [expose] the lie, so that the court and jury [will know] that the witness had reason to expect lenient treatment for 'continued * * * co-operation’ * * * [I]f [a lie] is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth.” (People v Savvides, 1 NY2d 554, 556-557, supra.)
The People concede that the trial assistant’s representation to Ortiz was technically a "promise” but urge that it involved so little, and was so contingent and insignificant, that neither party regarded it as such and therefore no breach of duty or unfairness occurred.
It is not the form of a promise, or any label the parties may affix to it, that triggers the prosecutor’s duty of disclosure (see, People v Cwikla, 46 NY2d 434, 442, supra; People v Mangi, 10 NY2d 86, 91, supra). Rather, the obligation arises from the fact that the prosecutor and the witness have reached an understanding in which the witness’s cooperation has been exchanged for some quid pro quo on the part of the prosecutor. Once such an understanding has been reached, it is for the jury to determine how much value to assign it in terms of assessing the witness’s credibility. Here, the prosecutor’s assurance created an expectation of some benefit which should have been made known to the jury in assessing the credibility of Ortiz, the only civilian witness called to rebut the testimony of Pablo Rodriguez.[2] While the People now seek to denigrate the possible benefit of the trial assistant’s representation to Ortiz, the significance of a promise made to a witness is a matter not for the prosecutor but for the jury. In actual fact, the trial assistant did make known Ortiz’s cooperation against defendant to the Special Prosecutor; the Special *498 Prosecutor did decide to recommend lifetime probation rather than incarceration, relying in part upon Ortiz’s cooperation in the present case, and so advised the sentencing Judge; and the court did follow that recommendation in sentencing Ortiz (Philippe testified that in his experience, the recommendation was invariably followed). The trial assistant’s failure to reveal the promise in the first instance, her failure to correct Ortiz’s misstatement that she had been promised nothing with respect to her pending case, and her own affirmative mischaracterization in the summation constituted both a denial of defendant’s rights and a breach of her own obligations as an officer of the court (see, People v Pelchat, 62 NY2d 97, 105).
The prosecutor was further delinquent in failing to discover and disclose the terms of the cooperation agreement entered into between Ortiz and the Special Prosecutor’s office. While we need not reach the question whether knowledge of agreements made with a witness by prosecutors in other offices should generally be imputed to a trial prosecutor, in this case the "separateness of offices” cannot excuse the failure to learn of the cooperation agreement (see, Giglio v United States, 405 US 150, 154, supra). Indeed, it was not any "separateness of offices” that stood in the way of transmission of the information but rather a disinclination to ask whether there was any such agreement, a subject that should have been of particular interest in view of its pertinence to Ortiz’s credibility. Certainly, on these facts it was improper for the trial assistant to assume the lack of any cooperation agreement as she did when she argued in summation that no promises had been made. To excuse the failure to learn of the promise in circumstances such as presented here could only serve the undesirable objective of discouraging the obvious, appropriate inquiry.
The Rosario Issue
As the trial court correctly held, Ortiz’s statement, recorded and filed by Carrano, was Rosario material, which should have been turned over to defendant. We disagree, however, with the court’s conclusion that this Rosario violation does not require reversal because the error was "inadvertent” and "harmless.”
In People v Consolazio (40 NY2d 446, 454), we made clear that "failure to turn over Rosario material may not be ex *499 cused on the ground that such material would have been of limited or of no use to the defense, or that a witness’ prior statements were totally consistent with his testimony at trial. [Citations omitted.] We [rejected] arguments that consideration of the significance of the content or substance of a witness’ prior statements can result in a finding of harmless error.” In the 11 years since Consolazio, this court has not deviated from the principle that harmless error analysis is inappropriate with respect to Rosario violations. As we explained in People v Perez (65 NY2d 154, 160), the "essence of the Rosario requirement, that the prosecutor supply all of a witness’ * * * statements relating to his testimony, is that a judge’s impartial determination as to what portions may be useful to the defense, is no substitute for the single-minded devotion of counsel for the accused.” When the prosecution fails completely in its obligation to deliver Rosario material to defense counsel, the courts will not attempt to determine whether prejudice accrued to the defense. "The failure constitutes per se error requiring that the conviction be reversed and a new trial ordered.” (People v Ranghelle, 69 NY2d 56, 63; see also, People v Jones, 70 NY2d 547.)
The same may be said of what has been characterized as the prosecutor’s inadvertence in failing to produce Carrano’s report: we have already determined that in such circumstances a new trial is required. As we noted in People v Ranghelle (69 NY2d 56, 63, supra), even "the People’s good-faith effort to locate, identify and discover all Rosario material does not excuse their failure to produce covered material”. The People’s neglect in not checking a pertinent file in their control for six or seven months prior to trial cannot excuse their failure to produce covered material.
Harmless Error
In that the Rosario violation itself requires reversal and a new trial, we do not reach the issue whether harmless error analysis can or should be applied with respect to the promises alone.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Alexander, *500 Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa concurs in the result and in the portion of Judge Kaye’s opinion dealing with "The Promises Issue”, noting his separate concurring opinion in People v Jones (70 NY2d 547) with respect to "The Rosario Issue”.
Order reversed, etc.

. People v Rosario, 9 NY2d 286, rearg denied 9 NY2d 908, cert denied 368 US 866, rearg denied 14 NY2d 876, rearg denied 15 NY2d 765; see also, CPL 240.45 (1) (a).

. The hearing court’s conclusion that the trial assistant’s promise to make Ortiz’s cooperation known to the Special Narcotics Prosecutor "was apparently given in the context of the Corchado case, not the Rodriguez case” is not borne out by the record. Even if the promise related to the Corchado case, it was made before Ortiz testified at defendant’s trial for the murder of Rodriguez. Ortiz’s testimony denying that any promises had been made to her was in any event false, was left uncorrected by the trial assistant, and was misstated in summation to buttress the witness’s credibility-