OPINION OF THE COURT
 

 Simons, J.
 

 Defendants have been convicted of manslaughter, second degree, and criminal possession of a weapon, second degree, charges resulting from the death of Maxine Peterson on May 28, 1988. The prosecution’s principal witness against defendants, and the only one identifying them, was Tony Malloy. Malloy admittedly had been a drug user and had two prior felony convictions. At the time of trial, he was on probation
 
 *5
 
 for one of the prior convictions and three open felony charges were pending against him.
 

 Defendants sought pretrial disclosure of any promise of leniency made to Malloy in exchange for his favorable testimony against them. Although the prosecution revealed some arrangements made with Malloy, it failed to advise defendants that Assistant District Attorney Dan McCarthy, the trial assistants’ superior, had in fact agreed with Malloy’s attorney that Malloy would not be required to go to prison on the pending charges if he testified against defendants. Defendants assert that McCarthy’s agreement with Malloy’s counsel was
 
 Brady
 
 material and that the prosecution’s failure to disclose it requires a new trial. We agree and therefore reverse the orders of the Appellate Division.
 

 I
 

 In response to the pretrial request for
 
 Brady
 
 material, the prosecution acknowledged that a few days after Malloy’s Grand Jury appearance it purchased airplane tickets to Virginia for Malloy and his girlfriend and paid their first month’s rent there. It also paid Malloy a total of $1,500 in cash before he returned to New York for the trial about a year later. The pending charges against him were adjourned until after defendant’s trial.
 

 Malloy testified at trial that he was told by the District Attorney’s office at the time he returned that he would be relocated in the future, but asserted that no promises of leniency had been made with respect to his pending charges. Inasmuch as a conviction on any of the open charges would render Malloy a persistent felony offender, subject to a lengthy mandatory sentence of imprisonment, defense attorneys asked him how he could be assured of relocation unless the District Attorney contemplated a dismissal of the pending charges. Notwithstanding this apparent inconsistency, Malloy insisted no promises had been made. He acknowledged, however, that while in Virginia he had talked with McCarthy at least 25 times on the telephone and had met with him on other occasions after his return to New York and before he testified.
 

 During the trial, the defense learned that McCarthy had promised Malloy’s attorney, Jonathan Latimer, that Malloy could avoid incarceration if he testified truthfully against defendants. Defendants subpoenaed Latimer who testified that
 
 *6
 
 he and McCarthy had negotiated such an agreement following Malloy’s Grand Jury testimony. It was his "understanding”, Latimer said, that no promises were made directly to Malloy, and he believed no details of the agreement were communicated to the two trial assistants. Citing the attorney-client privilege, Latimer refused to disclose what, if anything, he told Malloy about the agreement. He also stated that he met with the trial assistants and Malloy when they prepared Malloy’s trial testimony. Latimer testified that at these meetings the trial assistants instructed Malloy that if asked about promises of leniency he was to answer that none had been made to him.
 

 Defendants moved to dismiss the indictment or for a new trial on the ground that there was an agreement with Malloy for leniency and that it constituted
 
 Brady
 
 material that should have been disclosed before trial
 
 (People v Novoa,
 
 70 NY2d 490;
 
 People v Cwikla,
 
 46 NY2d 434;
 
 People v Savvides,
 
 1 NY2d 554). The trial court ruled that a
 
 Brady
 
 violation had occurred, but determined that defendants were not deprived of a fair trial as a result. The court reasoned that disclosure had been made during trial and that the manner of disclosure likely aided the defense by casting doubts on Malloy’s credibility. The Appellate Division affirmed.
 

 On this appeal, the People contend that Malloy was never informed of the agreement and, thus, it could not have influenced his testimony or affected his credibility. Alternatively, they argue that since defense counsel learned of the agreement through third parties during trial, defendants had "a meaningful opportunity” to use it, and thus the People’s failure to disclose the agreement is not grounds for reversal
 
 (see, People v Cortijo,
 
 70 NY2d 868;
 
 People v Brown,
 
 67 NY2d 555,
 
 cert denied
 
 479 US 1093;
 
 People v Smith,
 
 63 NY2d 41).
 

 It is worth noting at the outset that no prosecutor with knowledge of the negotiations with Malloy or his counsel or the details of the agreement has yet made a full disclosure to any court. Thus, the People’s argument that Malloy’s credibility was not affected by the agreement requires that we accept the assertions of Malloy and the trial assistants that they did not know of McCarthy’s promises. Even if Malloy were ignorant of the agreement or its details, however, the scheme employed by the District Attorney’s office undermines the purposes of the
 
 Brady
 
 and
 
 Savvides
 
 rules. It cannot be condoned.
 

 
 *7
 
 II
 

 Prosecutors occupy a dual role as advocates and as public officers and, as such, they are charged with the duty not only to seek convictions but also to see that justice is done. In their role as public officers, they must deal fairly with the accused and be candid with the courts
 
 (see, People v Pelchat,
 
 62 NY2d 97, 105;
 
 see also, People v Vilardi,
 
 76 NY2d 67, 76;
 
 People v Simmons,
 
 36 NY2d 126, 131-132). This rule of fairness, rooted in the concept of constitutional due process, has been given substance by the
 
 Brady
 
 decision which imposes on the People the duty to disclose to the defense evidence in its possession that is favorable to the accused
 
 (Brady v Maryland,
 
 373 US 83;
 
 see also, People v Novoa,
 
 70 NY2d 490,
 
 supra; People v Cwikla,
 
 46 NY2d 434,
 
 supra).
 
 The prosecutor’s duty is not lessened because
 
 Brady
 
 material may affect only the credibility of a government witness. Indeed, we have held explicitly that the duty includes promises of leniency given to the witness in exchange for favorable testimony against an accused
 
 (People v Novoa, supra; People v Cwikla, supra; People v Savvides, supra).
 
 Moreover, the prosecutor’s duty extends to correcting mistakes or falsehoods by a witness whose testimony on the subject is inaccurate
 
 (People v Savvides,
 
 1 NY2d 554,
 
 supra).
 

 Even the most casual reading of the record in this case shows a determined effort by the prosecution to avoid these accepted standards of conduct and to undermine the rule of
 
 Savvides.
 
 In a studied effort, McCarthy sought to "shield” the trial assistants and Malloy from knowledge of the agreement. He sought to arrange negotiations so that only he and attorney Latimer knew of the promises and he urged Latimer not to divulge them to his client. Moreover, after the defendants learned of the agreement and subpoenaed Latimer to testify, they were blocked from determining whether Latimer had advised his client of the agreement by Latimer’s invocation of the attorney-client privilege. McCarthy’s scheme effectively foreclosed any meaningful inquiry into Malloy’s knowledge and whether promises of leniency affected his testimony. Moreover, it placed the trial assistants in the position of not only advising Malloy to testify that no promises of leniency had been made to him when they had been, either directly or indirectly, but also, because the trial preparation took place in his presence, of compromising Latimer’s ethical position and implicating him in the scheme to mislead the court and the defendants.
 

 
 *8
 
 In the final analysis, however, it does not matter whether the trial assistants were genuinely unaware of the arrangement or not. A prosecutor’s obligations to correct false testimony given by prosecution witnesses and to disclose
 
 Brady
 
 material are duties exercised by individual prosecutors and shared by the prosecutor’s office as a whole. Promises made to a defendant by one prosecutor are generally binding on others in the criminal law enforcement system and certainly promises made by a superior are binding on subordinates in the same office. More importantly, the trial assistants here were chargeable with knowledge of McCarthy’s promises to Malloy’s attorney
 
 (see, United States v Giglio,
 
 405 US 150, 154;
 
 People v Novoa, supra,
 
 at 498;
 
 Matter of Chaipis v State Liq. Auth.,
 
 44 NY2d 57, 64;
 
 People v Conlan,
 
 146 AD2d 319, 331). After Malloy had testified that no deal for leniency had been struck, the trial assistants, as representatives of their office, had the responsibility of clarifying the record by disclosing all the details of what had actually transpired between their office and Malloy and his attorney. They could not profess ignorance of the arrangement and rely on Latimer’s successful invocation of the attorney-client privilege to conceal the facts about the arrangement between Latimer and McCarthy. If the trial assistants had no personal knowledge of the agreement and could not advise the court and the jury about it, then they were required to produce McCarthy or someone else who could. The one thing they could not do was sit silently by and leave the issue in doubt
 
 (see, People v Novoa, supra,
 
 at 498).
 

 The People’s position is not saved by the rule stated in
 
 Cortijo
 
 and similar decisions
 
 (supra)
 
 in which we concluded that disclosure of the
 
 Brady
 
 material during trial obviated the
 
 Brady
 
 violation, provided the defendant had a meaningful opportunity to use the material. There was no full disclosure by an informed prosecutor here. With the record in this state, it is pointless to talk about an opportunity to use
 
 Brady
 
 material when the court and defense counsel are kept in ignorance of what the material is.
 

 Ill
 

 The error cannot be said to be harmless
 
 (People v Crimmins,
 
 36 NY2d 230, 237). Malloy was the sole identification witness, and his credibility was a pivotal consideration. Though the applicability of a harmless error analysis in cases such as this has been open to some question
 
 (see, People v Novoa,
 
 70 NY2d
 
 *9
 
 490, 499,
 
 supra; People v Conlan,
 
 146 AD2d 319, 331,
 
 supra),
 
 we hold that it is required.
 
 People v Savvides
 
 (1 NY2d 554, 557,
 
 supra)
 
 suggested that a violation like the one here constituted fundamental error requiring reversal, but the
 
 Savvides
 
 Court in fact employed a harmless error analysis. In labeling the error fundamental, it relied on
 
 People v Creasy
 
 (236 NY 205, 221), which likewise employed a harmless error analysis.
 

 Accordingly, in each case the order of the Appellate Division should be reversed, a new trial ordered on the present indictment solely with respect to the count of criminal possession of a weapon in the second degree, and the indictment otherwise dismissed without prejudice to the People, if they be so advised, to re-present any appropriate charges to another Grand Jury
 
 (see, People v Villani,
 
 59 NY2d 781, 782;
 
 People v Mayo,
 
 48 NY2d 245, 253).
 

 Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa and Smith concur; Judge Levine taking no part.
 

 In each case: Order reversed and case remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.