[918 NE2d 936, 890 NYS2d 424]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANNY COLON, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY ORTIZ, Appellant.

Argued October 20, 2009; decided November 19, 2009

**POINTS OF COUNSEL**

*Law Offices of Joel B. Rudin,* New York City (*Joel B. Rudin* of counsel), and *Legal Aid Society, Criminal Appeals Bureau* (*Harold V. Ferguson, Jr.,* and *Steven Banks* of counsel), for appellants. I. Appellants' convictions should be vacated because the prosecutor knowingly misled the jury about the motive, bias, and interest of her principal witness; had the truth come out, there is a reasonable possibility that the outcome of this close case would have been affected. (*Zappulla v New York,* 391 F3d 462; *United States v Bernal-Obeso,* 989 F2d 331; *Su v Filion,* 335 F3d 119; *United States v Agurs,* 427 US 97; *Napue v Illinois,* 360 US 264; *People v Steadman,* 82 NY2d 1; *People v Novoa,* 70 NY2d 490; *Jenkins v Artuz,* 294 F3d 284; *Mills v Scully,* 826 F2d 1192; *People v Perez,* 127 AD2d 707.) II. Appellants' convictions should be vacated under *Brady v Maryland* (373 US 83 [1963]) and *People v Vilardi* (76 NY2d 67 [1990]) because the People failed to disclose evidence contradicting their principal witness's testimony denying that he had any reason to

testify favorably for the People. (*Giglio v United States,* 405 US 150; *People v Wright,* 86 NY2d 591; *People v Steadman,* 82 NY2d 1; *People v Bond,* 95 NY2d 840; *People v Baxley,* 84 NY2d 208; *Kyles v Whitley,* 514 US 419; *People v Simmons,* 36 NY2d 126; *Griffin v United States,* 183 F2d 990; *People v Behling,* 26 NY2d 651; *United States v Bagley,* 473 US 667.) III. The convictions should be vacated because, under *People v Vilardi* (76 NY2d 67 [1990]), there is a reasonable possibility that defense counsel, at the time of trial, would have been able to use the investigative leads the People withheld to obtain admissible evidence that would have affected the outcome of the trial. (*DiSimone v Phillips,* 461 F3d 181; *United States v Gil,* 297 F3d 93; *Bowen v Maynard,* 799 F2d 593; *People v Soto,* 285 AD2d 618; *People v Robinson,* 133 AD2d 859; *People v Hunter,* 11 NY3d 1; *People v Joseph,* 86 NY2d 565; *People v Wallace,* 76 NY2d 953; *Ellsworth v Warden,* 333 F3d 1; *People v Settles,* 46 NY2d 154.)

*Robert M. Morgenthau, District Attorney,* New York City (*Patrick J. Hynes* and *Alan Gadlin* of counsel), for respondent. Both defendants' postjudgment motions were properly denied. (*Brady v Maryland,* 373 US 83; *Giglio v United States,* 405 US 150; *People v Fuentes,* 12 NY3d 259; *People v Novoa,* 70 NY2d 490; *Strickler v Greene,* 527 US 263; *Shabazz v Artuz,* 336 F3d 154; *People v Tellier,* 272 AD2d 347; *Bell v Bell,* 512 F3d 223; *United States v Bagley,* 473 US 667; *People v Hunter,* 11 NY3d 1.)

*Law Office of Marc Fernich,* New York City (*Marc Fernich* of counsel), *Sercarz & Riopelle LLP* (*Maurice H. Sercarz* of counsel), and *Richard D. Willstatter,* White Plains, for National Association of Criminal Defense Lawyers and another, amici curiae. I. The policies motivating *Brady v Maryland* (373 US 83 [1963]) and *People v Vilardi* (76 NY2d 67 [1990]) mandate broad disclosure of exculpatory information regardless of form. (*People v Novoa,* 70 NY2d 490; *United States v Rodriguez,* 496 F3d 221; *Berger v United States,* 295 US 78; *United States v Gil,* 297 F3d 93; *Leka v Portuondo,* 257 F3d 89; *Grant v Alldredge,* 498 F2d 376; *United States v Polisi,* 416 F2d 573; *DiSimone v Phillips,* 461 F3d 181; *United States v Price,* 566 F3d 900; *United States v Triumph Capital Group, Inc.,* 544 F3d 149.) II. Appellants' convictions must be reversed. (*People v Primo,* 96 NY2d 351; *Holmes v South Carolina,* 547 US 319; *Kyles v Whitley,* 514 US 419.)

*Weil, Gotshal & Manges LLP,* New York City (*Caitlin J. Halligan, Vernon S. Broderick, Eric S. Hochstadt* and *Cheri Veit* of

counsel), for Center on the Administration of Criminal Law at New York University School of Law, amicus curiae. I. Further guidance from this Court is warranted to clarify what conduct gives rise to a tacit agreement between a prosecutor and a cooperating witness for *Brady* disclosure purposes. (*Brady v Maryland,* 373 US 83; *Giglio v United States,* 405 US 150; *People v Novoa,* 70 NY2d 490; *People v Cwikla,* 46 NY2d 434; *Douglas v Workman,* 560 F3d 1156; *Bell v Bell,* 512 F3d 223; *Wisehart v Davis,* 408 F3d 321; *Alderman v Zant,* 22 F3d 1541; *United States v Shaffer,* 789 F2d 682; *DuBose v Lefevre,* 619 F2d 973.) II. This Court should adopt the Center on the Administration of Criminal Law's proposed rule that a tacit agreement is formed and must be disclosed where, prior to a cooperating witness testifying, the witness has reason to believe that the prosecutor will or has assisted him in receiving a benefit *and* the prosecutor suggests she will or has done so *or* actually contacts an agency or third party from whom a benefit was or could be obtained. (*People v Wright,* 86 NY2d 591; *People v Steadman,* 82 NY2d 1; *Brady v Maryland,* 373 US 83; *People v Vilardi,* 76 NY2d 67; *People v Savvides,* 1 NY2d 554; *People v Novoa,* 70 NY2d 490; *United States v Bagley,* 473 US 667; *Giglio v United States,* 405 US 150; *People v Santorelli,* 95 NY2d 412; *Bell v Bell,* 512 F3d 223.) III. The case at bar confirms the need for a clear rule that broadly defines tacit agreements for *Brady* disclosure purposes. (*People v Cwikla,* 46 NY2d 434; *People v Novoa,* 70 NY2d 490.)

### OPINION OF THE COURT

GRAFFEO, J.

Shortly after midnight on December 8, 1989, the occupants of a van opened fire on two cars at a Manhattan intersection, killing two men and wounding two others. In the fall of 1990, defendants Danny Colon and Anthony Ortiz were arrested in connection with the shootings and charged with four counts each of second-degree murder, attempted second-degree murder and first-degree assault, as well as various weapons offenses.

At their joint trial in 1993, only two witnesses linked defendants to the crime. Anibal Vera, a childhood friend and former associate of Colon in a drug-dealing operation, testified that he was with defendants the day after the shootings. According to Vera, Colon admitted that he was one of the shooters and that Ortiz also participated in the crime. During his testimony, Vera acknowledged that he did not implicate

defendants until he was arrested in March 1990 on misdemeanor drug charges. As a result of his entering into a cooperation agreement with the District Attorney's office, he agreed to testify against Colon and Ortiz. In return, he was permitted to enter a guilty plea to disorderly conduct and avoided jail time for what would have been a probation violation. Vera claimed that this favorable plea deal was the "only benefit" he received in exchange for his testimony and that the prosecutor did not "have anything to do with the disposition" of his subsequent 1992 felony drug charges, for which he received a sentence of $2^1/_2$ to 5 years upon his guilty plea.

The second witness, Daniel Core, testified that he spoke with Colon and Ortiz while they were incarcerated together and each admitted his role in the December 1989 shootings. Core recalled Colon describing the shootings as a drug-related ambush and that Colon had identified Wilbur Hernandez, Willie Perez and "Moose" as the other occupants in the van.[1] Core explained that at the time he reported this information to the authorities, he was facing life imprisonment for the March 1990 murders of the two survivors of the December 1989 attack, as well as federal drug conspiracy charges. He agreed to execute written cooperation agreements with state and federal prosecutors in the hope that, in exchange for his testimony against defendants, he would obtain substantially reduced sentences on his guilty pleas. Core also admitted at trial that he had been a drug dealer whose operations grossed up to $140,000 a day; that he was responsible for numerous murders in connection with his drug activities; and that he had previously lied to a grand jury in an unrelated case.

During summation, the prosecutor repeated Vera's assertion that he had not received "any benefit" other than the favorable plea agreement resolving his 1990 misdemeanor drug case. The prosecutor also stressed that she had "nothing to do with the plea [Vera] ultimately took with a two and a half to five year sentence" in connection with his 1992 felony narcotics arrest.

The jury convicted defendants of two counts each of murder in the second degree, attempted murder in the second degree and assault in the first degree, and one count each of criminal use of a firearm in the first degree, criminal possession of a

---

1. Hernandez and Moose were murdered in 1992 and were therefore never brought to trial. Perez pleaded guilty to third-degree criminal possession of a weapon.

weapon in the second degree and criminal possession of a weapon in the third degree. Defendants were sentenced to two consecutive prison terms of 25 years to life for the murder convictions, which were to run concurrently with the lesser sentences imposed for the other convictions. Their judgments were affirmed on direct appeal (*see* 238 AD2d 213 [1st Dept 1997], *lv denied* 90 NY2d 862 [1997], 90 NY2d 892 [1997]).

In 2003, Colon moved under CPL 440.10 to vacate the judgment, arguing that Vera had received additional benefits in exchange for his testimony and that the prosecutor had failed to correct Vera's false testimony. Ortiz later joined in the motion and Supreme Court conducted a hearing at which the prosecutor testified but Vera did not appear.

At the hearing, defendants established that the District Attorney's office had engaged in further activity on Vera's behalf that neither Vera nor the prosecutor revealed during the trial. Specifically, the prosecutor had assisted in the relocation of Vera's grandparents by contacting the New York City Housing Authority. Defendants also demonstrated that the prosecutor was involved with Vera's 1992 felony drug case on two occasions. First, the prosecutor appeared at a calendar call to tell Vera about a plea offer of $2^{1/2}$ to 5 years that had been authorized by the Office of the Special Narcotics Prosecutor. Second, approximately one month later, the prosecutor left a phone message with the narcotics prosecutor regarding Vera's status as a witness in defendants' murder trial.[2] Defendants also revealed that the prosecutor was aware that a gun had been recovered from Vera's hotel room prior to the murder trial and that Vera was never arrested or prosecuted for its possession.

Furthermore, the District Attorney's office produced two handwritten notes by the trial prosecutor, dated March 28, 1990, that pertained to her interviews of two women who claimed to have information about the shootings. These notes had not been disclosed to defense counsel prior to trial. Based on the content of the interview notes, apparently one woman had identified four persons as participants in the shooting: Little Danny, Willie Perez, Moose and Wilbert. The second note contained a slightly

---

2. Vera later absconded and was rearrested in March 1993, after which he pleaded guilty to criminal possession of a controlled substance in the fifth degree and received a prison term of $2^{1/2}$ to 5 years.

different list of four names obtained from the second woman— Danny, Willie, Moose and Wilbur.[3]

Following the hearing, Supreme Court denied defendants' CPL 440.10 motions to vacate the judgments. The Appellate Division affirmed, finding that any error was harmless (55 AD3d 444 [1st Dept 2008]). A Judge of this Court granted leave to appeal (*People v Colon*, 12 NY3d 782 [2009]; *People v Ortiz*, 12 NY3d 786 [2009]), and we now reverse.

In their role as public officers, prosecutors "must deal fairly with the accused and be candid with the courts" (*People v Steadman*, 82 NY2d 1, 7 [1993]). This duty requires prosecutors not only to disclose exculpatory or impeaching evidence but also to correct the knowingly false or mistaken material testimony of a prosecution witness. Where a prosecutor elicits or fails to correct such inaccurate testimony, reversal and a new trial are necessary unless there is no "reasonable possibility" that the error contributed to the conviction (*People v Pressley*, 91 NY2d 825, 827 [1997]; *see also Steadman*, 82 NY2d at 8-9).

Here, Vera testified at trial that the only benefit he received for his testimony was his favorable 1990 plea deal. In fact, it was the prosecutor herself who elicited this testimony during Vera's direct examination. But as the Appellate Division observed, the prosecutor's assistance on behalf of Vera's grandparents "constituted an additional benefit to the witness" (55 AD3d at 445), even though they did not ultimately move to a new apartment until two months after the trial. Vera also alleged, in effect, that the prosecutor had no involvement with his 1992 drug case. Yet, the prosecutor personally appeared in that case to convey the initial plea offer and later contacted the narcotics prosecutor regarding Vera's status as a cooperating witness. Hence, the prosecutor failed to correct Vera's misleading testimony and, in addition, compounded these errors by repeating and emphasizing the misinformation during summation.

Unlike the Appellate Division, we believe that there is a reasonable possibility that these errors affected the jury's verdict (*see People v Vilardi*, 76 NY2d 67, 77 [1990]). At trial, only two witnesses connected defendants to the crime—Core and Vera.

---

**3.** Before the murder trial, however, the prosecutor did turn over notes dated January 1990 arising from an interview of another woman who likewise implicated "Little Danny"—a nickname that evidently belonged to someone other than Danny Colon. Defendants were therefore aware of the alleged "Little Danny" lead before trial.

Core had previously committed perjury and was a self-described drug kingpin and murderer. His veracity was further called into question given that he was facing life imprisonment on both state and federal charges when he agreed to testify against defendants. Vera's testimony was therefore crucial. But the false testimony elicited by the prosecutor regarding the benefits extended may well have impacted the jury's perception of Vera's credibility. By their very nature, benefits conferred on a witness by a prosecutor provide a basis for the jury to question the veracity of a witness on the theory that the witness may be biased in favor of the People. For this reason, it is important that witnesses provide truthful testimony when questioned about the receipt of such benefits, and the People must be vigilant to avoid misleading the court or jury. Rather than correct the inaccurate testimony, the prosecutor here exacerbated the problem during her closing comments. We also concur with the Appellate Division's observation that the prosecutor should have turned over the two March 1990 interview notes.[4] On this record, we conclude that a new trial is warranted.

Accordingly, in each case, the order of the Appellate Division should be reversed, defendant's motion pursuant to CPL 440.10 granted, defendant's judgment of conviction and sentence vacated and a new trial ordered.

Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

In each case: Order reversed, etc.

---

4. Although Supreme Court, following the CPL 440.10 hearing, ultimately found that neither the police nor the prosecutor intended to benefit Vera by not arresting or prosecuting him in connection with the gun found in his hotel room before the murder trial, we are of the view that this information should have been timely disclosed to the defense.