People v Giuca (2018 NY Slip Op 00846)





People v Giuca


2018 NY Slip Op 00846


Decided on February 7, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
RUTH C. BALKIN
L. PRISCILLA HALL
HECTOR D. LASALLE, JJ.


2016-06775
 (Ind. No. 8166/04)

[*1]The People of the State of New York, respondent,
v
John Giuca, appellant.


Law Office of Mark A. Bederow, P.C., New York, NY (Andrew M. Stengel of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Diane R. Eisner of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Danny K. Chun, J.), entered June 13, 2016, which, after a hearing, denied his motion pursuant to CPL 440.10 to vacate a judgment of the same court (Alan D. Marrus, J.) rendered October 19, 2005, convicting him of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the order is reversed, on the law and the facts, the defendant's motion to vacate the judgment is granted, the judgment is vacated, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
On October 12, 2003, at approximately 6:40 a.m., Mark Fisher was murdered a few blocks from the defendant's home. Fisher, along with several other individuals, including the defendant and the codefendant, Antonio Russo, had been at the defendant's home prior to the murder. The primary evidence against the defendant at trial came from three witnesses who testified regarding conflicting inculpatory statements made to them by the defendant.
One of those witnesses, John Avitto, who had a lengthy criminal history and been incarcerated with the defendant on Rikers Island, testified regarding inculpatory statements made to him by the defendant while they were incarcerated together. At the time of his trial testimony, Avitto had pleaded guilty to a felony burglary charge. Under the terms of his plea agreement, Avitto was to successfully complete a drug treatment program. If Avitto failed to successfully complete the program, he faced an alternate sentence of 3½ to 7 years incarceration.
During direct examination by the prosecutor at the defendant's trial, Avitto testified, as relevant to this appeal, that he had been doing well in the drug program, and that he had one relapse after which he called his caseworker and asked for further help. He further testified that he first contacted the police with respect to the defendant's case sometime in June of 2005, and that he met with either the prosecutor or detectives four times prior to testifying. He also testified that he was not promised or given anything, nor did he ask for anything, in exchange for his testimony.
On cross-examination, Avitto testified that he left the drug program without permission on June 9, 2005, and appeared in court for his criminal case on June 13, 2005. He also testified that police officers associated with the defendant's case assisted him in getting to court on that day. He admitted to relapsing upon leaving the program on June 9, 2005, and then again on August 24, 2005. He denied contacting the police or the prosecution to receive assistance with his own case, and denied contacting the police immediately after leaving the drug program.
During redirect examination by the prosecutor, Avitto reiterated that after he left the drug program, he voluntarily contacted his caseworker and appeared with him in court on June 13, 2005, and that the court released him and gave him another opportunity to complete the program. Avitto testified similarly with respect to his second relapse. Avitto also testified that he had pleaded guilty in the burglary case months before he spoke to the police about the defendant's case, and he reiterated that he did not contact the police about the defendant's case because he had left the drug program.
After Avitto's testimony, the defendant's attorney made a request for any Rosario material (see People v Rosario, 9 NY2d 286) regarding Avitto, and specifically any information regarding his contact with the police. The prosecutor stated that she was present for all interviews with Avitto, and that there were no notes taken and no documents generated.
During summation, the prosecutor repeated and emphasized Avitto's testimony. Furthermore, the prosecutor asserted that there was no evidence that Avitto received any benefit or consideration for his testimony, that when Avitto left the drug program he contacted his caseworker right away, that it was not surprising that a judge would give Avitto multiple chances when he was showing himself to be acting responsibly, and that Avitto contacted the police with information regarding the defendant's case because "for once he tried to do something right."
The defendant was convicted of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree. He was sentenced to a prison term of 25 years to life on the murder conviction, to run concurrently with the lesser sentences imposed on the other convictions. The judgment was affirmed on direct appeal (see People v Giuca, 58 AD3d 750).
Thereafter, the defendant moved pursuant to CPL 440.10 to vacate the judgment, contending, inter alia, that the People violated Brady v Maryland (373 US 83) and knowingly used false and misleading testimony.
At a hearing on the motion, the evidence demonstrated that after Avitto left the drug program on June 9, 2005, he contacted police that same day regarding providing information on the defendant's case, and that a warrant was issued for Avitto's arrest on June 10, 2005. The evidence further demonstrated that Avitto met with detectives and the prosecutor on June 13, 2005. During that meeting, Avitto informed the detectives and the prosecutor that he had left the drug program, and that a warrant had been issued for his arrest. Furthermore, the detectives and the prosecutor, in addition to his caseworker, accompanied Avitto when he returned to court on June 13, 2005. The prosecutor appeared on behalf of the District Attorney's office and informed the court that Avitto was cooperating in a murder investigation. Moreover, there was evidence which demonstrated that the prosecutor discussed with Avitto's caseworker and the court the possibility of Avitto entering another drug program, and having him reside with his mother. The defendant demonstrated that the District Attorney's office did not provide such information to the defense prior to trial.
Additional evidence demonstrated: that Avitto had not done well while in the drug program; that he had violated the conditions of his plea agreement on numerous occasions; that he was discharged from one drug program for bringing cigarettes into the program and distributing them to other patients; and that during at least one of several court appearances related to violations which occurred subsequent to June 9, 2005, the issue of Avitto's cooperation and upcoming testimony was mentioned. Moreover, the District Attorney's office had sent an email communication to the agency overseeing Avitto's drug treatment, requesting that his case be marked "for special attention," and [*2]that the District Attorney's office be kept posted as to his progress. The defendant demonstrated that none of this additional information was provided to the defense prior to trial.
Following the hearing, the Supreme Court denied the defendant's motion to vacate the judgment. We reverse.
The People have a duty to disclose to the defense evidence in its possession that is favorable to the accused (see Brady v Maryland, 373 US 83; People v Steadman, 82 NY2d 1, 7). The disclosure of evidence affecting credibility falls within this general rule (see Giglio v United States, 405 US 150, 154; People v Steadman, 82 NY2d at 7; People v Novoa, 70 NY2d 490, 496). Thus, the "existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles" (People v Cwikla, 46 NY2d 434, 441; see Giglio v United States, 405 US at 153-154; People v Steadman, 82 NY2d at 7; People v Novoa, 70 NY2d at 496). "It is not the form of a promise, or any label the parties may affix to it, that triggers the prosecutor's duty of disclosure" (People v Novoa, 70 NY2d at 497). "Rather, the obligation arises from the fact that the prosecutor and the witness have reached an understanding in which the witness's cooperation has been exchanged for some quid pro quo on the part of the prosecutor. Once such an understanding has been reached, it is for the jury to determine how much value to assign it in terms of assessing the witness's credibility" (id.).
Prosecutors must not only disclose exculpatory or impeaching evidence but must also correct the knowingly false or mistaken material testimony of a prosecution witness (see People v Colon, 13 NY3d 343, 349; see also People v Steadman, 82 NY2d at 7; People v Novoa, 70 NY2d at 496). "Where a prosecutor elicits or fails to correct such inaccurate testimony, reversal and a new trial are necessary unless there is no reasonable possibility that the error contributed to the conviction" (People v Colon, 13 NY3d at 349 [internal quotation marks omitted]). "By their very nature, benefits conferred on a witness by a prosecutor provide a basis for the jury to question the veracity of a witness on the theory that the witness may be biased in favor of the People. For this reason, it is important that witnesses provide truthful testimony when questioned about the receipt of such benefits, and the People must be vigilant to avoid misleading the court or jury" (id. at 350).
To establish a Brady violation, a defendant must show that the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature, the evidence was suppressed by the prosecution, and prejudice arose because the suppressed evidence was material (see People v Fuentes, 12 NY3d 259, 263; see also People v Garrett, 23 NY3d 878, 885). In New York, where, as here, a defendant makes a specific request for undisclosed evidence, materiality is established if there exists a reasonable possibility that it would have changed the result of the proceedings (see People v Fuentes, 12 NY3d at 263).
Based on the evidence presented at the defendant's trial and at the hearing, we find that the prosecutor had a duty to disclose the circumstances surrounding Avitto's initial contact with the police regarding the defendant's case, the circumstances surrounding the prosecutor's appearance in court with Avitto on June 13, 2005, and the information that the prosecutor provided to the court at that appearance (see People v Steadman, 82 NY2d 1; People v Novoa, 70 NY2d 490). The prosecutor further had a duty to correct Avitto's testimony regarding his contact with her and with detectives, the circumstances surrounding that contact, and his progression in drug treatment (see People v Colon, 13 NY3d 343; People v Steadman, 82 NY2d 1; People v Novoa, 70 NY2d 490).
While the evidence presented at the hearing did not demonstrate "the existence of an express promise" between Avitto and the District Attorney's office, there was "nonetheless a strong inference" of an expectation of a benefit "which should have been presented to the jury for its consideration" (People v Cwikla, 46 NY2d at 442). Avitto's credibility was "an important issue in the case" (Giglio v United States, 405 US at 155) and a "pivotal consideration" for the jury (People v Steadman, 82 NY2d at 8), and the nondisclosed evidence was certainly impeaching in nature.
The evidence at issue here—Avitto's immediate contact with the police on June 9, 2005, after leaving the drug program, his subsequent court appearance with detectives and the prosecutor on June 13, 2005, when he was released on his own recognizance, as well as his ability [*3]to remain out of custody despite poor progress in his drug treatment and numerous violations—was of such a nature that the jury could have found that, despite Avitto's protestations to the contrary, "there was indeed a tacit understanding" between Avitto and the prosecution that he would receive or hoped to receive a benefit for his testimony (People v Cwikla, 46 NY2d at 441). This evidence was material in nature, and its nondisclosure prejudiced the defendant, as it constituted impeachment material and tended to show a motivation for Avitto to lie (see id. at 442).
Accordingly, the prosecutor was not only required to disclose this evidence to the defendant, but was further required to clarify "the record by disclosing all the details of what had actually transpired" between the District Attorney's office and Avitto (People v Steadman, 82 NY2d at 8). The prosecutor further had the obligation to correct any misleading or false testimony given by Avitto at trial regarding his contact with detectives and the prosecutor, and his progression in drug treatment (see People v Colon, 13 NY3d 343; People v Novoa, 70 NY2d 490). These errors were further compounded when the prosecutor reiterated and emphasized Avitto's misleading testimony during summation (see People v Colon, 13 NY3d 343; People v Novoa, 70 NY2d 490; People v Cwikla, 46 NY2d 434; see also People v Taylor, 26 NY3d 217).
Giving proper deference to the credibility findings of the hearing court, we nevertheless find that the nondisclosure of this evidence by the prosecution, even if it was as a result of negligence and not by design, created a reasonable possibility that the prosecution's errors affected the jury's verdict. Accordingly, reversal and a new trial are necessary (see Giglio v United States, 405 US at 154-155; People v Colon, 13 NY3d at 349; see also People v Cwikla, 46 NY2d at 442).
In light of our determination, we need not reach the defendant's remaining contentions.
DILLON, J.P., BALKIN, HALL and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court