Bellacosa, J.
(dissenting). I would affirm the order of the Appellate Division upholding the judgment of conviction for sodomy, sexual abuse and endangering the welfare of a developmentally disabled youngster.
The reversal of this conviction turns solely on a foundational evidentiary ruling of the trial court after the victim, who suffered from certain impairments, was unable to make an in-court identification of the defendant. The refusal to uphold the statutory authorization in CPL 60.25 that contemplates the admission of third-party identification testimony in circumstances such as are presented in this case elevates form over substance and undermines the central goal of this remedial statute.
The procedural heart of this appeal is CPL 60.25. It authorizes a trial court to allow a third party to testify to an out-of-court identification of a defendant when the direct witness— here, the victim — is "unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question” (CPL 60.25 [1] [a] [iiij).
It is well established that a genuine inability — as contrasted to a failure of will — is necessary to satisfy the statutory prerequisite (People v Johnson, 75 NY2d 856, 857; People v Bayron, 66 NY2d 77, 82) and to justify the use of the statutory alternative to present relevant evidence to the jury. However, this Court has not limited the statutory inability to a specific incapacity to recall a previously formed mental image of the defendant. For example, the statute may be utilized in a situation in which the witness, although possibly able to recall the previously formed mental image of the defendant, is unable to make an in-court identification due to a "change in appearance of the defendant” (People v Nival, 33 NY2d 391, 395; accord, People v Bayron, 66 NY2d 77, 80 supra; see also, *47 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 60.25, at 639). This Court has succinctly stated the core of the rule as:
”[W]here at the time of trial the eyewitness is unable to recognize the defendant, testimony of his own previous identification, as well as testimony of third persons 'to whom the witness promptly declared his recognition on such occasion’ (CPL 60.25 [1] [b]), is allowable as evidence-in-chief of identification” (People v Bayron, 66 NY2d 77, 81, supra [emphasis added]).
The application of the statute and rule in this case starts with a victim who suffered from certain developmental disabilities affecting his sight and mental acuity. These were established at a pretrial proceeding by psychiatric reports, and the victim’s difficulties were evident to the trial court through his over-all behavior on the stand, as also reflected by the contextual material recited in the majority opinion. After the victim failed to make an in-court identification of defendant-appellant as the person who committed the sodomy and other crimes, defense counsel moved in limine to preclude the arresting officer’s testimony to the victim’s earlier identification of the defendant on the ground that there had been no failure of recollection. The trial court denied that motion with the following ruling:
"the court: Counsel, I’m going to let the police officer testify and if you wish, when [the victim] gets back on the stand, before we go any further, I will have the witness walk around the courtroom and see if he can identify anyone, if he sees anybody that he recognizes.
"defense counsel: No, Judge.
"the court: You don’t? Okay. I notice the type of glasses he’s wearing. I don’t know if he can see that far, or if he didn’t look close enough, or if the District Attorney knows what questions to ask him.”
Taken in trial context, these explanations establish — as defendant-appellant concedes — that the court based its CPL 60.25 ruling on a finding that the complainant was either unable to follow the prosecutor’s instructions to look around the courtroom or was unable to see the defendant.
The next day, after the victim had left the stand, defense *48 counsel moved to reargue the motion to prevent the officer’s testimony concerning the victim’s identification of the defendant. The court denied reargument. Defense counsel next moved for a mistrial on the basis of the denial of reargument, and that motion was denied. Finally, defense counsel moved to have his client released on his own recognizance owing to the failure of the victim to identify defendant as the perpetrator. In response to that motion, the court elaborated its findings on the victim’s failure to identify as follows:
"the court: As long as you made that application, the Court observed this infant stand up when the District Attorney asked him the question if he saw anybody in the courtroom that he recognized, or words to that effect, I don’t recall it. This child did not even look in the direction of the defendant. He looked to his left, to start with, then said no.
"defense counsel: Your Honor,—
"the court: Just a moment, because I didn’t interrupt you.
’’Then the District Attorney asked him to look again, and look around. So he looked half of the way, and I observed him closely, and he said no. I’m not sure whether or not he asked him, would you look around the courtroom. He hardly glanced in that direction, and he said, 'Nope.’ ”
The predicates established in this record and specifically relied upon by the trial court should justify the application of the remedial statute. The trial court found, in satisfactory and functional effect, that the victim suffered an inability "to state, on the basis of present recollection, whether or not the defendant is the person in question” (CPL 60.25 [1] [a] [iii]).
The trial court’s determination that the victim is unable to recognize the defendant, as a matter of foundation to allow the officer’s testimony in lieu of the victim’s, "must be accorded the same effect as a statement by the witness that he cannot now identify the defendant” (People v Cwikla, 46 NY2d 434, 444). Appellate courts might quarrel in reflective hindsight whether the offer of foundation proof could have been more ample or more particular and precise, or whether alternative means should have been tried before invoking the statutory authorization. However, an appellate court reviewing trial records should look to the entire context of the trial court’s ruling and the factual bases supporting it. In this case, *49 the record contains sufficient evidence to support the necessary inferences for the trial court’s foundational conclusion that it was appropriate to invoke CPL 60.25.
The application of the guiding principles which lead to the overturning of this conviction falls prey, in my respectful view, to a form-over-substance second guess of the trial court. The analysis suffers from an overly strict, semantical parsing of the record and of the statute upon which the foundational evidentiary ruling rests. This Court’s ruling, rendered at a time and circumstance far removed from and lacking an appropriate deference to the trial court’s correct grasp of the sensitive trial dynamics in this particular instance, contradicts the customary and appropriately reasonable flexibility given trial courts in the exercise of prudent judgment in these foundational evidentiary contexts. Without sacrificing protections due to accuseds in these circumstances, trial courts are in a better position to weigh fairly and sensitively the competing concerns reflected by a record like this one.
In sum, erecting a highly formalized and stylized rubric is not warranted here. The irony is that this conviction would very likely be upheld if the People had asked this victim foundational questions slightly different in form or degree, or if the trial court had mouthed its ruling to echo the precise phraseology of the statute. Matters of such import as the admission of key evidence in felony prosecutions should not turn on formalistic, semantical nuances and variations. Rather, substance should govern at trial and on appellate review. Unfortunately, here substance does not prevail and an otherwise valid conviction is unravelled along with, precedentially, a realistic and proper use of a remedial statute designed to apply fairly in situations, just such as occurred here.
Acting Chief Judge Simons and Judges Kaye and Hancock, Jr., concur with Judge Smith; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Titone concurs.
Order reversed, etc.