Smith, J.
(dissenting). I dissent because the trial contained two prejudicial errors. First, the trial court refused to direct the production of Brady material (Brady v Maryland, 373 US 83) and Rosario material (People v Rosario, 9 NY2d 286). Second, the trial court refused to charge the jury that the main witness against defendant was an interested witness. The requests for the material and the charge were timely made.
Defendant was convicted of the murder of Brian Rich on August 3, 1986. The chief witness against defendant, Richard Saunders, testified that in July 1986, defendant approached him and asked if he would kill Rich for $10,000. Saunders did not think defendant was serious and refused. On the night of August 3, 1986, around 11:00 p.m., Saunders testified, he was walking with Rich and a woman, when a van pulled up. Saunders then saw the door open and defendant shoot and kill Rich.
It was not until almost a year after the murder, in June 1987, that Saunders, who was in jail on a robbery charge, contacted a detective and eventually agreed to cooperate with the police concerning the murder of Rich. During the course of that cooperation, Saunders telephoned defendant and en *660 gaged him in a conversation about the murder. Saunders asked defendant why he had to kill Rich "that way” and "put so many holes in him.” According to Saunders, defendant replied that "the Uzi was a weapon they used to kill and that was the gun he had to use.” Saunders also testified that the day after the killing, defendant came to his apartment and asked him why he had been with Rich knowing that a contract was out on his life and that he, Saunders, could have been killed. Defendant also threatened Saunders not to reveal anything incriminating defendant.
Defendant took the stand and denied killing Rich. He stated that his conversation with Saunders about the murder was "macho” conversation and also pursuant to a prearranged plan to help Saunders with his robbery charge. Saunders told him that if someone at the jail listened to his conversation with Saunders, that would be a violation of Saunders’ constitutional rights, Saunders would then be freed and would not testify against defendant.
Defendant made a pretrial request that any agreement between the prosecution and Saunders be produced. Prior to Saunders’ cross-examination at trial, defendant again asked for the cooperation agreement and, specifically, the minutes of the March 4, 1988 proceeding at which the robbery charges against Saunders were dismissed "for the reasons stated on the record.” Defendant claimed that the People had not met their burden in providing Brady or Rosario material. No minutes or cooperation agreement were produced. At the trial Saunders testified that he had agreed to testify in return for the pending robbery charges being dropped.
Both the majority and the dissent are in accord that any cooperation agreement between the prosecution and their witness, Saunders, had to be revealed. In fact, revelation is required by our cases. "The existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles” (People v Cwikla, 46 NY2d 434, 441). Where the majority and dissent differ is in the People’s obligation to produce any evidence of that cooperation agreement which was contained in the proceedings that dismissed the robbery charge against Saunders. In my view the People had an obligation not only to reveal the cooperation agreement but also to provide defendant with any written or recorded evidence of that agreement. The assertions here by *661 the People’s main witness as to the nature of the agreement were not binding upon defendant.
Moreover, if at the time of the dismissal of the robbery charge against Saunders, he discussed this case at all, that discussion, arguably, constituted Rosario material. In People v Rosario (supra) this Court, noting that there was no substitute for the "single-minded counsel for the accused” (9 NY2d, at 290), rejected a contention that it was sufficient for a trial court to examine prior statements of a witness and turn over to the defendant anything it believed to be relevant.
I cannot agree with the majority that the only basis for defendant’s request for production of the minutes of the dismissal proceeding against Saunders was the issue of credibility. In his omnibus motion, defendant had asked for "[a]ny evidence known to the People which may be exculpatory in nature and favorable to the defendant.” At trial, defendant asked for production of the minutes because, "The People did not meet their burden with providing me with Brady or Rosario material.” Toward the end of his cross-examination of Saunders, defendant again asked for the transcript and, as he spoke, was cut off by the Trial Judge who said he would not get the transcript.
It is also clear that both at the Appellate Division and here, defendant argued that the production and introduction of the cooperation agreement were essential to his contention that the witness, Saunders, had a strong interest and bias in the outcome of the case. Such impeachment evidence, like exculpatory evidence, falls within the Brady rule that such evidence must be provided to defendant (see, United States v Bagley, 473 US 667, 676).
The failure to produce the transcript of the dismissal proceeding creates an issue as to Saunders’ assertion at trial that he did not commit the robbery of which he was charged and which led to the cooperation agreement. If Saunders admitted or arguably admitted that he committed the robbery, his credibility is severely compromised. Moreover, the transcript is relevant not only on the issue of credibility but on the issues of interest and bias as well. Defendant had the right to see the transcript in order to use it on cross-examination. In light of the failure to produce the transcript, it is simply speculative to conclude that it was cumulative.
Turning to the second issue, defendant requested a charge that Saunders was an interested witness. The request was *662 refused both prior to and after the court’s charge. When a cooperation agreement such as that here has been entered into in return for testimony, it is incumbent upon the trial court, when requested, to give more than the standard charge on interested witnesses (see, People v Jackson, 74 NY2d 787 [specific charge as to the interest of cooperating witness should have been given]).
For the foregoing reasons, the order of the Appellate Division should be reversed, the conviction vacated and a new trial ordered.
Chief Judge Kaye and Judges Simons, Titone, Bellacosa and Ciparick concur with Judge Levine; Judge Smith dissents and votes to reverse in a separate opinion.
Order affirmed.