OPINION OF THE COURT
Seymour Rotker, J.
Defendant moves, pursuant to CPL 440.10, for an order vacating a judgment of conviction rendered under indictment No. 892/87, and directing a new trial.
The defendant alleges that consideration was given two People’s witnesses on outstanding cases, for their cooperation in testifying against the defendant herein, and such information was not provided to the defendant for the purpose of examining said witnesses.
On June 8, 1988, the defendant was convicted after a trial by jury of murder in the second degree, attempted murder in the second degree, and assault in the first degree. He was sentenced on June 29, 1988, to consecutive terms of imprisonment of 25 years to life on the murder in the second degree convictions; 816 years to 25 years on the conviction of attempted murder in the second degree, and a concurrent sentence of 5 years to 15 years on the conviction of assault in the first degree.
On June 24, 1988, defendant made a motion, pursuant to CPL 330.30 returnable on June 29, 1988, alleging that the verdict should be set aside on the grounds that promises were made to, and benefits conferred on two eyewitnesses, namely Allen Jordan and Cupidon Harris, in consideration of their testimony, and also, the District Attorney failed to correct a lie made by Cupidon Harris concerning his violation of probation. In a decision of this court, said motion was denied on June 29, 1988.
On July 1, 1988, a notice of appeal was filed on behalf of the defendant. Said appeal is currently pending before the Appellate Division, Second Department.
By order dated January 17, 1995, this court ordered a hearing to be held, and within that order, the court found certain facts. Those facts are set forth herein as they appear in the order dated January 17, 1995.
*57 Allen Jordan was convicted by plea on August 5, 1987, under indictments numbered 3838/87 and 104/87, of attempted burglary in the second degree and criminal sale of a controlled substance in the fifth degree, respectively. At the time of his plea, he was promised a sentence of one year on each plea, to be served consecutively. This promise was made contingent on Mr. Jordan testifying truthfully at the trial of Nathan May, the defendant herein.
Numerous adjournments were subsequently taken pending sentence awaiting Nathan May’s trial, and Mr. Jordan’s testimony thereat. Some time after August 26, 1987, and prior to testifying at the trial of Nathan May, Allen Jordan was sentenced to consecutive terms of imprisonment of one year on each of two indictments.
Allen Jordan testified at the trial of Nathan May and stated that no deals or promises were made, however, he was told his sentence would be one year.
As to witness Cupidon Harris, the court finds:
Mr. Harris was convicted, under indictment No. 2188/82, and was sentenced to five years’ probation by Honorable Robert T. Groh.
On or about May 4, 1988, Harris, who was on probation, had charges and specifications filed against him charging that he was convicted of criminal possession of marihuana on May 30, 1985; convicted of unlawful possession of marihuana on May 13, 1985; convicted of disorderly conduct on August 21, 1986; that he failed to report to the Department of Probation on February 2, 1988, February 18, 1988, and "thereafter”, and changed his address without reporting the change to the Department of Probation.
Though the record is somewhat unclear, it is apparent that the violation of probation was noticed and the defendant failed to appear and a bench warrant was issued. On May 26, 1988, Mr. Harris voluntarily surrendered on the warrant in Part J-13 before the Honorable Joseph Farlo. He appeared without an attorney. At that time, Assistant District Attorney (A.D.A.) Nussdorf represented that he was appearing on behalf of A.D.A. John Scarpa (the trial assistant on the Nathan May matter) and the District Attorney was recommending the release without bond of Mr. Harris. The warrant was vacated and the matter was then adjourned to June 8, 1988, which was a date convenient for the Honorable Robert Groh before whom the violation of probation was pending. The defendant *58 was then released on his own recognizance at the District Attorney’s request.
On June 8, 1988, Mr. Harris, after having testified in the May trial, appeared without an attorney before the Honorable Robert Groh, at which time A.D.A. Morse asked to address the court and stated that he had been informed "by the A.D.A. in the homicide trial” (presumably Mr. Scarpa) that the trial is ended and that the defendant, Mr. Harris, had "furnished valuable and extensive help to the People”. The court stated: "All right, since he’s been a big help to the A.D.A.’s, I’m going to restore him to probation”.
Mr. Scarpa then asked to address the court after it was observed that May’s defense attorney, David Cohen, was in the court, and stated that he wanted the record to be clear that there was no quid pro quo for the court’s action and his testimony at trial.
On or about June 1, 1988, Mr. Harris had testified at the homicide trial of Nathan May, In dealing with his credibility as an eyewitness and victim of the crime for which Mr. May was standing trial, he testified as to the convictions underlying the violation of probation, but denied that any promises were made to him to secure his testimony in the May case.
On January 25, 1995, the defendant herein rested at the hearing without calling any witnesses, and the People did the same. Defense counsel reiterated arguments previously made in his papers stating that circumstantially it has been proven that promises had been implied, if not directly made, and as the People failed to respond to his first two arguments, they had been conceded.
CPL 440.30 (1) states, in pertinent part: "If the motion is based upon the existence or occurrence of facts, the motion papers must contain sworn allegations thereof, whether by the defendant or by another person or persons. Such sworn allegations may be based upon personal knowledge of the affiant or upon information and belief provided that in the latter event, the affiant must state the sources of such information and the grounds of such belief.”
Subdivision (6) states: "At such a hearing, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion.”
The defendant has failed in this burden. The defendant, by resting on the papers as submitted, maintains that he has met *59 his burden and his papers prove his allegations by a preponderance of the evidence. The defendant is incorrect, however.
The record is devoid of any evidence that any promises were made to Cupidon Harris to induce him to testify for the prosecution. The papers submitted by counsel do not indicate any personal knowledge of any promises or the grounds or source for the belief that promises were made. The papers do not contain an iota of evidence, either direct or circumstantial, from which a finding, "by a preponderance of the evidence”, may be made (CPL 440.30 [6]).
The trial transcript, the transcript of the violation of probation hearing and affirmations submitted by the various Assistant District Attorneys clearly show that no promises were made to the witness, Cupidon Harris. If defendant’s proof of promises made to induce favorable testimony is dehors the record, he has failed to make it a part of the record herein. The allegations made by the defendant herein, as to the witness, Cupidon Harris, have been unsubstantiated by any evidence.
The existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under Brady principles (People v Cwikla, 46 NY2d 434). The obligation arises from the understanding reached between the prosecutor and the witness wherein cooperation of the witness is exchanged for some quid pro quo (People v Novoa, 70 NY2d 490). This duty under Brady includes promises of leniency given to a witness in exchange for favorable testimony against an accused (People v Steadman, 82 NY2d 1).
Case law is extremely clear that when a promise of leniency has been exchanged for favorable testimony, the prosecutor has a duty to disclose this to the defendant, thereby allowing an attack on the witness’s credibility (People v Steadman, supra; People v Cwikla, supra; People v Brown, 67 NY2d 555; People v Smith, 63 NY2d 41; People v Savvides, 1 NY2d 554). Cited case law, however, addresses only those situations where a promise of leniency was to be fulfilled (in futuro) upon the testimony of the witness.
The promises of leniency are given in consideration for the favorable testimony. A promise is an undertaking that something shall or shall not happen in the future (Black’s Law Dictionary 1213 [6th ed]). It implies a quid pro quo and may form the basis of consideration in the formation of a contract. *60 Herein, there is a contract between prosecutor and witness where a promise of leniency is given in consideration for the witness’s favorable testimony. However, only consideration which is present or future will support a contract (Black’s Law Dictionary 307 [6th ed]). The facts herein belie a contract. The witness was promised leniency for his favorable testimony. However, he received what amounted to a gift, as he was sentenced prior to his testimony.
The underlying basis for the imposition of the duty to disclose these agreements is the possibility that the agreement may be a strong factor in assessing the credibility of a witness and evaluating the worth of the testimony (People v Cwikla, supra; People v Savvides, supra). The offer of leniency in exchange for favorable testimony may furnish the witness with strong motivation to "exceed * * * the bounds of truth” (People v Savvides, supra, at 558).
This strong motivational factor is not present herein. The witness had already been sentenced and was serving that sentence. There was no longer a motivation to lie to gain the benefit of the promised leniency as the leniency had already been received.
Concomitant with the duty to disclose is the duty of the prosecutor to correct misstatements by a witness concerning the nature of the promise (People v Novoa, 70 NY2d 490, supra). If the witness mischaracterizes or falsely denies a promise, the prosecutor must immediately, either through statement or appropriate examination, correct the mischaracterization or the lie (People v Novoa, supra; People v Savvides, supra). However, in order for the prosecutor to correct misstatements or lies, they must be apparent. The witness, Allen Jordan, denied that he was promised leniency, but did testify that he was told he would get one year. He had already been sentenced to two consecutive one-year sentences. There was no outstanding promise to the witness and his characterization that there were no deals could be viewed as correct. A deal implies an agreement between two parties wherein one undertakes to complete a task and the other transfers consideration upon completion. When Mr. Jordan testified, there was no deal. Benefit had already been conferred without any action on the part of the witness. The People no longer had any hold over Mr. Jordan should he decide not to testify or to testify in a manner other than indicated. In effect, there was no deal, and, therefore, no misrepresentation for the People to correct.
*61 As to Cupidon Harris, a violation of probation had been filed, but there had been no determination of the accusations. Mr. Harris had not been found guilty of any of the charges and specifications and, therefore, had not been violated on his probation as of the date of his testimony. There was, therefore, no misstatement for the prosecutor to correct.
A court-ordered conference was held on the instant indictment on October 13, 1987. The defendant orally made requests for discovery and constitutional hearings. The People orally responded, and the court’s order, dated October 29, 1987, memorialized the discovery order directing the People to provide the defense with all Brady material on a continuing basis. There was, however, no specific request.
Failure to supply exculpatory material when a specific request is made is not excusable (United States v Agurs, 427 US 97; Brady v Maryland, 373 US 83; People v Smith, 63 NY2d 41; People v Cwikla, 46 NY2d 434, supra). However, when a general request is made, due process is violated only if the omitted material created a reasonable doubt where none otherwise existed (People v Smith, supra). A constitutional error occurs if the evidence is such that had it been disclosed to the defense, the result of the proceeding would have been different (People v Chin, 67 NY2d 22; People v Mullady, 180 AD2d 408; People v Alongi, 131 AD2d 767).
There is no indication that any of this evidence would have created a reasonable doubt where none had previously existed. Both witnesses testified to their prior criminal histories. Mr. Jordan testified as to his current sentence and the crimes for which he received those sentences. Mr. Harris, as well, testified to his prior involvement with the criminal justice system, as well as activities with Mr. Jordan in the recovery of Mr. Jordan’s drugs. Undoubtedly the jury had a very clear picture of these two individuals, and had sufficient information with which to assess their credibility. There was also testimony from other individuals present at the time. Clearly, the jury’s verdict was not based on the testimony of one individual with a questionable reputation.
The motion is, in all respects, denied.