MEMORANDUM.
***950 The order of the Appellate Division, insofar as appealed from, should be reversed and the case remitted to the Appellate Division for consideration of the facts ( CPL 470.25[2][d] ; 470.40[2][b] ) and issues raised but not determined on appeal to that Court. Viewing the evidence in the light most favorable to defendant (see People v. Watts, 57 N.Y.2d 299, 301, 456 N.Y.S.2d 677, 442 N.E.2d 1188 [1982] ), the trial court properly declined to charge the jury on the justification defense because, even assuming that the jury could rationally find that defendant subjectively believed *763 he had been threatened with the imminent use of deadly physical force, "the jury could not rationally conclude that his reactions were those of a reasonable [person] acting in self-defense" ( People v. Reynoso, 73 N.Y.2d 816, 818, 537 N.Y.S.2d 113, 534 N.E.2d 30 [1988] ). Further, on this record, there was no reasonable view of the evidence that defendant could not safely retreat at the time that deadly physical force was used (see Penal Law § 35.15[2][a] ; compare Matter of Y.K., 87 N.Y.2d 430, 434, 639 N.Y.S.2d 1001, 663 N.E.2d 313 [1996] ).
WILSON, J. (dissenting).
The majority acknowledges that we must view "the record in a light most favorable to the accused" ( People v. McManus , 67 N.Y.2d 541, 549, 505 N.Y.S.2d 43, 496 N.E.2d 202 [1986] ;see People v. Watts, 57 N.Y.2d 299, 301, 456 N.Y.S.2d 677, 442 N.E.2d 1188 [1982] ). Thus, when a defendant requests a justification charge, as Mr. Sanchez did here, the ***951 trial court must give it "if any reasonable view of the evidence would permit the fact finder to decide that the conduct was justified" and, "[u]nder such circumstances, refusal to charge that the People must disprove the alleged justification is reversible error" ( McManus , 67 N.Y.2d at 549, 505 N.Y.S.2d 43, 496 N.E.2d 202 ). The majority accepts, at least for the purpose of its analysis, that Mr. Sanchez had a reasonable subjective belief that he was responding to a threat of deadly force, but concludes that whatever Mr. Sanchez may have believed, no reasonable person-with Mr. Sanchez's "background and experiences" ( People v. Wesley, 76 N.Y.2d 555, 559, 561 N.Y.S.2d 707, 563 N.E.2d 21 [1990] )-could have believed that Mr. Sanchez's actions were justified as self defense.
Following is the evidence most favorable to Mr. Sanchez. (True, there is contrary evidence, much of which would likely have caused a trier of fact to reject Mr. Sanchez's defense had the court given a justification charge, but that weighing of evidence is the function of the jury, not this Court.) Ask whether, were you a reasonable juror accepting the following evidence as true and disregarding all contrary evidence as false, you would nevertheless reject Mr. Sanchez's justification defense:
• Mr. Sanchez was stabbed in the abdomen in a bar, and was hospitalized for 10 days. The "word on the street" was that the attackers had not "finished the job."
• Two months after his release from the hospital, Mr. Sanchez and four friends (two men and two women) were at a restaurant in Poughkeepsie. While in the bathroom, three men beat up Mr. Sanchez while the bouncer stood by watching. Mr. Sanchez had a purple eye and a sharp pain in the location of his prior stab wound. Mr. Sanchez feared his stomach wound had been reopened, and was afraid of being stabbed again. The attackers said they would kill him if he ever came back.
• Returning to his friends, Mr. Sanchez asked one of his female friends to go open the car because he wanted to leave "real quick" so that he could get medical help.
• As Mr. Sanchez and his friends were leaving, 10-15 people, including his attackers, followed them outside with threats, saying not to come back and that they would kill them. Mr. Sanchez and his friends testified that they were afraid of ***952 being attacked by the group. One of Mr. Sanchez's male friends, Mr. Martinez-Mendoza, told Mr. Sanchez to go to the car and get another friend's gun. Mr. Sanchez retrieved the gun and walked back to where his two male friends stood. *764 • Mr. Sanchez then saw one of his bathroom attackers reach into the waist of his pants for "something shiny" that appeared to be a knife. Mr. Sanchez also heard beer bottles being broken for use as weapons. The decedent, one of the threatening group, said something to another of the bathroom attackers, began taking off his belt, and grabbed Mr. Sanchez's other male friend (Mr. Ramirez). At that point, Mr. Martinez-Mendoza took the gun from Mr. Sanchez's hand and shot in the direction of the group, striking and killing the decedent.
• Mr. Martinez-Mendoza, the shooter, told the police he fired the gun because he felt threatened and afraid because a crowd of people had come after him and his friends. At Mr. Sanchez's trial, Mr. Martinez-Mendoza testified that that the reason he had the gun and was aiming it at the people outside El Molino was to protect his friends, and that he was fearful for his and his friends' safety.
Mr. Sanchez, of course, had a duty to retreat without the use of deadly force, but only if he "kn[ew] that with complete personal safety, to [him]self and others" he would be able to retreat from the confrontation ( Penal Law § 35.15[2] ). However, even if Mr. Sanchez might have been able to leave in safety at some earlier time that night, that is irrelevant; the question is whether safe retreat was available to him when deadly force was employed, which is when the duty to retreat arises (see Matter of Y.K., 87 N.Y.2d 430, 434, 639 N.Y.S.2d 1001, 663 N.E.2d 313 [1996] ).
If you believe, on the above version of the facts, that no reasonable jury could conclude that Mr. Sanchez's actions were justified, then the majority is correct, and Mr. Sanchez should have been denied the justification charge he requested. But if you believe that you might have done the same as Mr. Sanchez under the circumstances, to protect yourself and your friends, then these facts, along with the many contrary facts, must be submitted to the jury for determination of Mr. Sanchez's claim of justification.
Lurking somewhere beneath the majority's opinion is the thought that you mustn't bring a gun to a knife fight. We ***953 should keep in mind that, although there is no evidence that the group threatening Mr. Sanchez and his friends was armed with guns, courts of this state have held that the threat of deadly force may exist when a group of people attacking an individual is not armed at all ( Matter of Y.K., 87 N.Y.2d at 434, 639 N.Y.S.2d 1001, 663 N.E.2d 313 ) or when, in a one-on-one altercation, an unarmed victim "grabs" at a defendant's gun ( People v. Brown, 160 A.D.3d 39, 45, 71 N.Y.S.3d 422 [1st Dept. 2018] ). The use of broken glass and glass bottles may also constitute deadly force (see People v. Mason, 132 A.D.3d 777, 777, 17 N.Y.S.3d 768 [2d Dept. 2015] [striking victim in the face with a glass bottle considered deadly physical force]; People v. James, 137 A.D.3d 1587, 1588-1589, 27 N.Y.S.3d 756 [4th Dept. 2016] [defendant used deadly force when she cut victim's forehead with piece of broken glass; could be considered deadly force when victim struck defendant's brother in the head with a champagne bottle]; People v. White, 66 A.D.3d 585, 586, 888 N.Y.S.2d 15 [1st Dept. 2009] [throwing glass bottle, which shattered upon contact with victim's face, was deadly force] ). Courts have also characterized a variety of items as dangerous instruments which, if used as part of a real or threatened attack, might justify the use of deadly force ( People v. Carter, 53 N.Y.2d 113, 116, 440 N.Y.S.2d 607, 423 N.E.2d 30 [1981] [rubber boots]; People v. Cwikla, 46 N.Y.2d 434, 442, 414 N.Y.S.2d 102, 386 N.E.2d 1070 [1979] [handkerchief used as *765 a gag] ); People v. Bouldin, 40 A.D.2d 1045, 1045, 338 N.Y.S.2d 686 [3d Dept. 1972] [spatula] ).
In short, Mr. Sanchez adduced sufficient evidence to require the court to instruct the jury on justification. The jury would have been free to reject that defense, but we should not do so on this appeal. Accordingly, I would affirm the order of the Appellate Division.
On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals ( 22 NYCRR 500.11 ), order, insofar as appealed from, reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts ( CPL 470.25[2][d] ; 470.40[2][b] ) and issues raised but not determined on appeal to that court, in a memorandum.
Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Feinman concur; Judge Wilson dissents in an opinion in which Judge Rivera concurs.