People v Matias (2026 NY Slip Op 00328)

People v Matias

2026 NY Slip Op 00328

Decided on January 27, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 27, 2026

Before: Manzanet-Daniels, J.P., Kennedy, Shulman, Michael, Hagler, JJ. 

Ind. No. 4295/17|Appeal No. 4883|Case No. 2020-02163|

[*1]The People of the State of New York, Respondent,
vJose Matias, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (J.M. Boselli of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Ethan Solomon of counsel), for respondent.

Judgment, Supreme Court, New York County (Laura Ward, J., at hearing; Steven Statsinger, J., at plea; Kate Paek, J., at sentencing), rendered February 21, 2020, convicting defendant of assault in the second degree, and sentencing him, as a second felony offender, to a term of four years, unanimously affirmed.
The waiver of the right to appeal that defendant executed at the time of his guilty plea was ineffective to waive review of his suppression claim. The court's statement that defendant's guilty plea automatically waived "the claim that any search, seizure, or interrogation was illegal" was incorrect, because by pleading guilty after an adverse suppression ruling, defendant retained the right to have this Court review that decision (see People v Francisco, 171 AD3d 536, 537 [1st Dept 2019], lv denied 33 NY3d 1104 [2019]; CPL 710.70[2]).
On the merits, the motion court correctly determined that the statements defendant made to a prosecutor after he properly received and waived his Miranda rights were voluntary in the context of this particular case (see People v Aveni, 22 NY3d 1114, 1117 [2014]; People v Guilford, 21 NY3d 205, 208 [2013]).
When Miranda warnings are properly provided, "the requisite inference of voluntariness may be relatively easily drawn" absent evidence of "official illegality potentially impairing the voluntariness of a subsequent admission" (Guilford, 21 NY3d at 208). For example, false representations made during an interrogation will render the confession involuntary where "the deception was so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d 1, 11 [1980]). The voluntariness of a defendant's statements must be determined by considering "the totality of the circumstances under which the statement was obtained" (Aveni, 22 NY3d at 1117).
Defendant was convicted based upon an alleged home invasion that occurred in October 2017. The victims, who sustained serious injuries, described an altercation where two apparent package delivery men arrived at their front door, brandished a firearm, and attacked them. The victims provided descriptions of both men. The following day, defendant's wife reported to the police that her husband was involved in the incident. One of the victims then identified defendant in a photo array, and he was arrested shortly thereafter.
Following the arrest, defendant was interviewed by the detective and prosecutor in two interrogation sessions. He was properly given Miranda warnings on both occasions. During both interviews, defendant was hesitant to identify his "friend," expressing fear for his family's safety. He also referred to his past as a confidential informant and reputation in the neighborhood as a "rat." The detective assured him: "Just so you know, this stays in here. This doesn't get released to anybody. This is, you know, for us . . . it doesn't go out to the public." Defendant continued to claim that he was innocent.
The following day, defendant was interviewed by an assistant district attorney, and again was hesitant to disclose his friend's full name and other details regarding the incident. The prosecutor assured defendant that "I'm not going to tell anybody about you giving up somebody's name," reiterating that she wasn't going to "tell anybody about this conversation." The prosecutor continued to press defendant, saying "you might be scared of [your friend], but that shouldn't prevent you from telling me the truth here, because I'm not going to tell anybody about this, this conversation that we had, and neither is the detective." She then explained the further investigative steps that would be taken, including DNA testing, and urged defendant to tell the truth.
Shortly thereafter, defendant admitted his involvement in the incident, although he continued to claim that he had not physically engaged with anyone at the apartment where the alleged home invasion occurred. In October of 2019, following an adverse ruling on his suppression motion regarding his incriminatory statements, defendant ultimately pleaded guilty to assault in the second degree in exchange for a prison sentence of four years. In February 2020, he was sentenced as promised.
While we do not condone the prosecutor's statements in this case, we find that they were not sufficiently unfair or deceptive to render the defendant's statements involuntary. In this context, we find that the prosecutor's remarks — and particularly, her promise that she was not going to tell "anybody" about defendant's statements — while troubling, were not "so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d 1, 11 [1980]). As the motion court's findings made in connection with denying defendant's motion to suppress were not "clearly erroneous" (see e.g. People v Martin, 112 AD3d 453, 454 [1st Dept 2013]), there is no basis to overturn the conviction.
Defendant has a lengthy criminal history, and was familiar with the criminal process at the time he was arrested and interrogated. It is uncontested that he knew that the interviews were being recorded. His statements to the detective and prosecutor further confirm his understanding that the interviews were being preserved, and could potentially be used against him. Defendant was not offered unqualified confidentiality, and it was not specifically conveyed to him that his statements were off the record and would not be offered at trial. Nor did the prosecutor "expressly promise defendant leniency in exchange for his cooperation" (People v Shakoor, 198 AD3d 490, 491 [1st Dept 2021], lv denied 38 NY3d 930 [2022]). Finally, given the overwhelming evidence of defendant's guilt, he would not have been particularly motivated to speak in exchange for a promise not to use his statements against him in court.
Thus, even insofar as the prosecutor's statements may have falsely assured defendant that she would withhold information from defendant's accomplice, this deception was not "so fundamentally unfair as to deny due process" (People v Tarsia, 50 NY2d 1, 11 [1980]; see also CPL 60.45[2][b][ii]). To be clear, we are not announcing a blanket rule that the same or similar statements would not give rise to an involuntary confession in another context. As noted, the voluntariness of a defendant's statements must be determined by considering "the totality of the circumstances under which the statement was obtained" (Aveni, 22 NY3d at 1117). In this case, we find the prosecutor's statements, at best, were carelessly overbroad and confusing, and at worst, were strategically intended to lull defendant into a false sense of security. We thus take this opportunity to remind the People that prosecutors "must deal fairly with the accused" (People v Steadman, 82 NY2d 1, 7 [1993]). While we are not convinced that happened here, under the totality of the circumstances, we must affirm.
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 27, 2026